H. KNITTEL v. E. H. CUSHING.

(Case No. 3226.)

1. SALE — RENT — REGISTRATION.— A piano was delivered by C. to N. under a written contract, reciting that N. had hired and received it of C., N. promising, in addition to $75 paid on its delivery, to pay $50 for each quarter it was kept, to return it on demand, not to remove it without C.'s written consent, and to keep it insured. It was also stipulated that on further payment of $350 (in addition to the $75), in monthly payments which N. agreed to make, the piano was to become the property of N. In a suit for the piano by C. against K., who had in good faith bought of N., *held,*

(1) That the terms of the agreement are so inconsistent that it cannot be he'd to be both a renting and a sale.

(2) That it is not a renting, as the first part of the agreement recites it to be.

(3) If valid at all, it must be held to be a sale, and that the pretended renting was but a device to secure the remainder of the purchase money.

(4) That thus regarded, conceding its validity as between the parties, it would be contrary to the policy of the registration laws to hold the contract binding on a purchaser in good faith, for value, without notice.

---

[1] NOTE BY THE REPORTER.— This article is not carried into the Revised Statutes, nor is it to be found in Paschal's Digest.

APPEAL from Washington. Tried in 1875 before the Hon. I. B. McFarlane.

*Sheppard & Garrett*, for appellant.— These contracts are in restraint of the freedom of trade, and in derogation of our statute against fraudulent conveyances (Pasch. Dig., art. 3876), and the statute (Pasch. Dig., art. 4993) requiring all liens upon personal property to be recorded in the county where the property is or may be taken to.

Our court has heretofore gone further than we now ask in the protection of innocent purchasers of personal property. Davis *v.* Loftin, 6 Tex., 500; Neal *v.* Sears, 31 Tex., 114. This last case is an exceedingly strong one. A. and B. had been partners in a bar and billiard saloon. A., who owned the tables, withdrew from the firm, and notice of the dissolution was published. A. permitted his tables to remain in the saloon in the possession of B., who, a short time afterward, borrowed some money of C., who had no notice of A.'s title, and gave him a trust deed upon the tables to secure payment. The tables were sold under this trust. In an action by A. against the purchaser for possession, it was held that he could not recover. Having invested B. with the *indicia* of title, he was held to suffer in accordance with the equitable rule that " he who trusts most shall suffer most." But it is not necessary to go to the same length in the case at bar. We take the position that the sale of the piano to Mrs. Newhard was in reality a sale. Appellant having purchased *bona fide*, without even any notice to put him upon inquiry, took an indefeasible title. This position is supported by the following authorities : Howes *v.* Bell, 7 B. & C., 481; Story on Sales, §§ 200–3; id., § 313; 2 Kent's Com., 496–8, and notes; Lickbarrow *v.* Mason, 1 Smith's L. C., notes, pp. 1091–3; Vaughn *v.* Hopson, 10 Bush (Ky.), 337; Rose *v.* Story, 1 Barr, 190; Martin *v.* Matheott, 14 Serg. & R., 214; Haak *v.* Linderman, 64 Pa. St., 499 (3 Am. Rep., 612); Haggerty *v.* Palmer, 6 Johns. Ch., 437; Herring *v.* Hoppock, 15 N. Y., 409; Waite *v.* Green, 35 Barb. 585 (36 N. Y., 556); Smith *v.* Lynes, 5 N. Y. (1 Seld.), 41; Hasbrouck *v.* Lounsbury, 26 N. Y., 598.

*Sayles & Bassett*, for appellee.— Appellee insists that by the terms of the contract by which Mrs. Newhard took possession of the piano in controversy, her possession was that of bailee, pure and simple.

The contract recites that she has hired the piano, for the use of which she agreed to pay a certain sum; and the piano was to be

returned to the plaintiff on demand, and that while in her posses-
sion it was not to be removed without his written consent, and was
to be kept under insurance. Was the proviso, that the piano should
become her property upon the payment of a certain sum of money,
inconsistent with the contract of hiring, so as to change the char-
acter of her possession from that expressly defined in the written
contract? In other words, is it impossible for parties to embrace
two separate and distinct contracts in the same instrument? or, is it
impossible for a party to hold a piece of property as a hire, with
the privilege or with the agreement to purchase at a future day?

It is said that the plaintiff clothed the person in possession with
all the *indicia* of ownership, and thus enabled her to perpetrate a
fraud. But is not the bailee, in every case of bailment, clothed with
the *indicia* of ownership by the mere possession of personal prop-
erty? Suppose that Mrs. Newhard had been in possession of the
piano under the contract of hiring, and that there had been no
stipulation for a sale, would she not have been clothed with precisely
the same evidence of ownership? Did the stipulation that she
might purchase the property upon a certain condition add anything
to the *indicia* of ownership? Did that stipulation in any way add
to her ability to perpetrate the fraud she committed in selling that
which was not hers to sell? The purchaser did not know of the
existence of such a stipulation. He acted solely upon the ground
that she was in possession, when he knew that possession alone was
not evidence of ownership. He was misled by no act of the plaint-
iff, because the fact which he says conferred upon Mrs. Newhard
the right to sell was not known to him.

. . . After giving extracts from the opinion in Dodd v. Ar-
nold, 28 Tex., 98, the brief proceeds:

The doctrine that possession carries with it the evidence of prop-
erty, so as to protect a person acquiring property in the usual course
of trade, is limited to cash, bank bills and bills payable to bearer.
Saltus v. Everett, 20 Wend., 287. And our statute has declared that
the possession of property, held under a loan, or subject to a reserva-
tion or limitation, shall not be deemed evidence of title, unless it has
continued for the space of three years, without demand made and
pursued by due process of law. Pasch. Dig., 3876.

In the ordinary business transactions, men necessarily place trust
and confidence in others, which is often violated or betrayed. The
law, in determining where the loss shall fall, cannot go into an investi-
gation of the facts of each particular case to decide which of the
parties is the most negligent, but applies to its solution certain gen-

eral rules; and in cases of the character of the one now under consideration, the test is the character of the possession; was it that of a bailee, or of an owner?

If the owner has delivered his property to another, under a contract of bailment, he has not invested him with the right to sell it. On the other hand, if he has sold the property and has delivered possession under a sale, the vendee can be treated as the owner, although the sale is subject to a defeasance. But so long as the contract of sale remains an executory agreement, the power of disposition does not pass; and whether the contract is one of bailment, of an executed, or an executory sale, is to be determined by the agreement of the parties. "The agreement is just what the parties intended to make it. If that intention is clearly and unequivocally manifested, *cadit quæstio*." Benj. on Sales, 228. In the case at bar, the ability of Mrs. Newhard to defraud the plaintiff or defendant in this case, is precisely the same whether she held the piano under a hiring or under a sale; and to determine where the loss shall fall, both parties being equally prejudiced by the misconduct of the possessor, the law only determines whether she held the property as a bailee or as owner.

The contract itself in this case shows that she came into possession by hiring, and the character of that possession has not been changed by the happening of the only event that could change it. She never became the owner by the payment of the purchase money. The contract of sale was an executory agreement, to become an absolute sale only upon the payment of the purchase money; and until then, by the express contract of the parties, the property was held under the contract of bailment.

"If, by the terms of the agreement, the property in the thing sold passed immediately to the buyer, the contract was termed, in the common law, 'a bargain and sale of goods;' but if the property in the goods was to remain for the time being in the seller, and only to pass to the buyer at a future time, or on the accomplishment of certain conditions, then the contract was called in law an executory agreement." Benj. on Sales, 3. "The distinction between the two contracts consists in this: that in a bargain and sale, the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, and without regard to the fact whether the goods be delivered to the buyer or remain in possession of the vendor; whereas, in the executory agreement, the goods remain the property of the vendor. In the one case, A. sells to B.; in the other, he only promises to sell. In the one case, as B. becomes

the owner of the goods themselves as soon as the contract is completed by mutual assent, if they are lost or destroyed, he is the sufferer. In the other case, as he does not become the owner of the goods, he cannot claim them specifically; he is not the sufferer if they are lost, cannot maintain trover for them, and has at common law no other remedy for breach of the contract than in an action for damages." Benj. on Sales, 227.

. . . Counsel cited and quoted from 1 Hilliard on Torts, p. 538, sec. 28; also Stevens v. Ellis, 48 Me., 501; Rawson v. Tuel, 47 Me., 506; Palmer v. Hand, 13 Johns., 433; Clark v. Wells, 45 Vt., 4; Zuchtman v. Roberts, 109 Mass., 53, and proceed:

In Crist v. Kleber, 2 Weekly Not. Cas., 158, reported in the Albany Law Journal, vol. XIII, No. 3, January 15, 1876, the rights of a *bona fide* purchaser, at a judicial sale, of chattels sold as property of bailee, was considered by the supreme court of Pennsylvania. A. rented a piano to B., with the privilege of purchasing during the term, A. reserving the right to retake the instrument at any time for non-payment of rent. B. neither paid rent nor purchased. It was subsequently sold as B.'s property, at a constable's sale for unpaid taxes, to C. A. brought replevin against C. to recover the instrument. C. offered to prove that A. had permitted possession by B. eight months after the term; that B. had declared that he had purchased it, and that, on a former·execution, it had been set apart to B., under the exemption laws. This evidence was held to be properly excluded.. The court, in delivering the opinion, said: "Possession under a mere bailment for hire is not a constructive fraud, otherwise much of the business of men would be ended, and the poorer the bailee the less would be his ability to hire the use of property needful to him." To which we add, that the privilege of purchasing given to a bailee did not add an iota to his ability to defraud the public. The *indicia* of ownership, from possession under a contract of bailment, is precisely the same as when the privilege of purchase is superadded.

It being admitted that a bailee cannot convey a title by sale, why should the fact that he has the privilege of purchase, upon certain conditions with which he has not complied, change the character of his illegal act? The character of his possession remains the same; as between the original parties the contract continues to be a bailment. And, as said by the supreme court of New York, in Palmer v. Hand, above cited, "In a contract between two honest men, who shall be the dupe of a swindler, the strict rule of law must be applied."

Counsel commenting on Hasbrouck *v.* Lounsbury, 26 N. Y., 598; Smith *v.* Lynes, 5 N. Y., 41; Austin *v.* Dye, 46 N. Y., 500, and Maynard *v.* Anderson, 54 N. Y., contended that they were not in conflict with their position, and that Wait *v.* Green, 35 Barb., 585, and 36 N. Y., 556, were overruled by subsequent cases in the same court. The brief proceeds:

In Haak *v.* Linderman, 64 Pa. St., 499 (3 Am. Rep., 612), the judgment rests expressly upon the grounds that, by the terms of the contract, there was an actual sale, accompanied with an actual delivery of the car, and that the contract, by its terms, simply gave a lien to the vendor for the purchase money. The court say: "Not one of the cases cited by the plaintiff sustains this as a bailment. The furthest they go is, when the contract is a clear bailment, with a superadded condition that, at the end of it, or during its continuance, the bailee should have option to purchase. Such was the case of Chamberlain *v.* Smith, 8 Wright, 431. The possession was, in that case, parted with only on the footing of a bailment. Before the option was exercised, the bailee then parted with the property by sale, and it was sold on execution against his vendee. The bailor gave notice of title, and sued the parties and sheriff seizing the same, and recovered. That accords with the principle stated in the outset of this opinion, and is supported by all the authorities. The other cases cited by the plaintiff in error stand on the same footing. The delivery of the property was on a contract of bailment with a stipulation to purchase. Here the delivery was on a contract of sale, with a reservation of a right of reclamation if not paid for. This right could be exercised only on the grounds of a lien existing in favor of the vendor, which was void as against creditors."

BONNER, ASSOCIATE JUSTICE.— This case was submitted to the court below on the following agreed statement of facts: "It is agreed by and between the parties to this suit, that a jury may be waived, and the case submitted to the court upon the following agreed statement of facts, and that judgment shall be rendered in favor of the party in whose favor the law may be adjudged upon the hearing:

"1. Plaintiff, a merchant in Houston, Harris county, Texas, entered into a contract with Mrs. Anna A. Newhard, now Reid, in regard to a certain piano-forte, which contract is filed and is to be considered a part of this statement, as follows:

"'HOUSTON, TEXAS, Sept. 14, 1871.

"'Mrs. Annie Newhard this day hired and received of E. H. Cushing piano-forte No. 16,149, 7 full octave, round corner, oct. legs,

made by Hallett, Davis & Co., for the use of which I promise to pay the said E. H. Cushing seventy-five dollars on receipt of the above piano-forte, and the further sum of fifty dollars for each and every quarter I shall keep the same, and the said piano-forte to be returned to him on demand, and not to be removed without his written consent, and be kept under insurance while this agreement is in force; provided, however, if I should pay the said E. H. Cushing seventy-five dollars on the receipt of the above piano, and the further sum of three hundred and fifty dollars in seven equal payments of fifty dollars cash each month, with interest thereon at the rate of ten per cent., all of which I agree to do, then said piano-forte shall become my property.                                    ANNA A. NEWHARD.'

"2. Said piano-forte came into the possession of defendant, who lives in Burton, Washington county, Texas, on June 26, 1872, and is now in his possession.

"3. The piano-forte, at the time of defendant's possession, was worth $350.

"4. The rent of said piano-forte is worth the sum of $10 per month.

"5. Mrs. Anna A. Newhard, now Reid, brought the said piano-forte from Houston to Burton and kept the same there for about eight months in her possession with the knowledge of plaintiff.

"6. Mrs. Newhard paid on said contract, on the day of its date, $75; September 15, 1871, she paid $83.25; January 25, 1872, she paid $113.87; July 2, 1872, she paid $48.18.

"7. The contract between Mrs. Newhard and plaintiff was not recorded in Harris county, nor in Washington county. Defendant had no actual notice of the plaintiff's claim upon said piano-forte, and was not aware of any facts to put him upon inquiry thereof. Mrs. Newhard enjoyed a good reputation in the community for integrity and veracity.

"8. Defendant, on June 26, 1872, purchased the piano-forte from Mrs. Newhard and paid her $350 in gold for it. She always claimed the piano-forte as her own property, and defendant bought it in good faith, and believed that it was so."

On the trial below, judgment was rendered in favor of plaintiff, E. H. Cushing, that he recover of the defendant H. Knittel the piano, and in the event that the same could not be found, that he recover as its value the sum of $350; he then and there agreeing to accept the sum of $160.32 in full satisfaction, if paid within twenty days.

The terms of the agreement above set out are so inconsistent that it cannot be held to be both a renting and a sale. It might be a

matter of doubt whether it should not be held void for inconsistency and uncertainty. It is not a renting, as the first part of the agreement recites it to be. If a valid instrument at all, it must be held to be a sale, and that the pretended renting was but a device to secure the remainder of the purchase money due. The price and terms of payment were agreed upon, and the possession delivered to Mrs. Newhard. The remainder of the purchase money was sought to be secured, not by a recorded lien under our statute of registration provided for this purpose, but through the pretended contract of renting. Conceding that, as between the original parties, the contract would be binding, yet it would be contrary to the policy of our registration laws to hold that it would be binding also upon the defendant Knittel, who is admitted to be a purchaser in good faith, for value, and without notice.

The case of Green *v.* Church was one very much like the present in its main features, in which it is said: " The sum of $400 for one month's rent of an instrument (piano) valued by both parties at $550, is preposterous, and when we add to that the stipulation that the renting is to continue for eleven months unless sooner terminated by the appellees, and that the rent contracted to be paid for that time, when added to the $400 paid in hand, makes up the sum agreed on as the price, and that Mrs. Martin had the privilege of becoming the purchaser at any time during the term upon paying the agreed rent, which was to be credited on the purchase price, there can be no room to doubt that the real transaction was intended to be a sale, and that the device of calling it a renting was resorted to in order to secure the payment of the ·$150 of purchase money not paid in hand, and that at best its effect was to give to the appellees a lien as against Mrs. Martin for the unpaid purchase money. . . . The well-defined policy of the law is to have as few secret liens and claims upon personal property as possible, that the title may be readily and safely transmitted from one to another. This is in the interest of trade as well as opposed to fraud and collusion." 13 Bush (Ky.), 433.

The well known high character of the plaintiff below forbids that there was any fraudulent intention in the transaction under consideration.

The two cases differ in degree — in the amount of the first payment — rather than in principle. The case in 13 Bush, *supra,* is sustained by that of Lucas *v.* Campbell, 88 Ill., 447, and Price *v.* McCallister, 3 Grant's Cases (Penn.), 248.

This seems to be contrary to a line of decisions in Missouri (Sum-

ner *v.* Cottey, 71 Mo., 121), but we think the rule here adopted the better one on sound principles of justice and public policy. The onerous terms imposed by the contract upon the vendee, Mrs. New-hard, in the nature of a penalty or forfeiture, do not recommend it to the favorable consideration of the courts.

The judgment below is reversed and here rendered in favor of H. Knittel, that he go hence without day and recover of E. H. Cushing all costs.

REVERSED AND RENDERED.

[Opinion delivered June 20, 1882.]