261 F.2d 588
 FIRST NATIONAL BANK OF FORT SMITH, ARKANSAS, and Gulf Screen & Wire Company, Inc., Appellants,
v.
H. A. PHILLIPS, Trustee in Bankruptcy for Nico Wire Cloth Corporation, Bankrupt, Appellee.
 No. 17362.
 United States Court of Appeals Fifth Circuit.
 December 11, 1958.
 
 Charles R. Vickery, Jr., Houston, Tex., Liddell, Austin, Dawson & Huggins, Houston, Tex., of counsel, for appellants.
 Jarrell D. McDaniel, Houston, Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel, for appellee.
 Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.
 HUTCHESON, Chief Judge.
 
 
 1
 By this appeal from an order[1] entered in a bankruptcy proceeding, denying their petition for review of the order[2] of the Referee denying their petition to reclaim 4 Fitz 36" Wire Weaving Looms, claimants-appellants seek to test its correctness.
 
 
 2
 Appellants agree that the "rental-purchase" agreement was not filed as a chattel mortgage in compliance with the Texas Statute[3] for the reservation of title as chattel mortgage, and that if it was in law a conditional sale or other reservation of the title to or property in chattels as security for the purchase money thereof, and, therefore, was in effect a mortgage, it was void against appellee and the reclamation petition is without merit.
 
 
 3
 Insisting, however, "the rental-purchase agreement is not a conditional sale because the bankrupt had no obligation to buy and no obligation to pay the purchase price", they urge upon us that it was a bona fide lease agreement, under the express terms of which the bankrupt acquired no interest whatever in the looms until after the last cent was paid and a bill of sale was issued.
 
 
 4
 On his part, appellee points out that, while in the printed contract form, which it was agreed was borrowed from a company actually engaged in the business of renting road equipment, the document was called "equipment rental agreement", in the actual contract as signed, the printed word "rental" was stricken and there was typed in in lieu thereof the words "rental-purchase". Further pointing out that, after identifying the property dealt with as four Fitz 36" Wire Weaving Looms, valued at $11,880, there was typed into the contract this significant, indeed vital, language:
 
 
 5
 "* * * above machinery furnished by Lessor under 36 months rental-purchase contract, last eight months rental payable in advance. Bill of sale to be issued at end of contract. Monthly payments to be made as per schedule "A" attached."[4]
 
 
 6
 and insisting that this language compels an answer to the question posed by this appeal, "Is the equipment rental-purchase contract a conditional sale required to be recorded as a chattel mortgage or is it a bona fide lease?", which requires an affirmance of the judgment, appellee thus correctly summarizes the content and effect of the Rental-purchase agreement, appellants' contentions as to it, and appellee's answer thereto:
 
 
 7
 "In summary, the agreement in substance states that Nico Wire Cloth Corporation agrees to pay $2640.00 prior to the delivery of the property in question, and agrees to pay a further sum of $9,240.00 in twenty-eight equal monthly payments and, Gulf Screen and Wire Co., Inc. agrees to issue and deliver a bill of sale (transfer of title) for the property in question, which was valued at $11,880.00, the exact amount of the payments which the Lessee agrees to pay. Further, the agreement contains a proviso that either party may terminate the agreement upon notice.
 
 
 8
 "Appellant's entire case is bottomed upon the premise that the Bankrupt did not agree to pay the sum of $11,800.00 or any other price for the property in question. After assuming this premise, the appellants conclude that there can be no sale. Appellee, in theory, hastens to agree with Appellant's conclusion, for absent an agreement to purchase, there can be no sale. But, Appellee emphatically denies the validity of Appellant's premise, for not only does the agreement expressly contain an agreement to pay the full purchase price, the entire transaction evidences an intention to so purchase."
 
 
 9
 We find ourselves in full agreement with these views. In 37A Texas Jurisprudence, "Sales", Sec. 113, Reservation of Title, it is said:
 
 
 10
 "Under the common law, a sale with a reservation of title in the seller pending the fulfillment of the condition is a conditional sale. This is true of a sale in Texas, evidently, unless title is reserved as security for the purchase money. As to sales of the latter class, the statute provides that all reservations of title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. Petersime Incubator Co. v. Bunn [Tex.Civ.App.], 239 S.W.2d 416."
 
 
 11
 Under the rule as above stated, in general accord with the courts of other states which have similar statutes, the Courts of Texas have without wavering, neither shadow of turning, uniformly held that the public policy of this state requires the closest scrutiny of all purchase agreements such as the one in question here to prevent the defeat of that policy by the use of forms, pretenses or devices designed to conceal the true nature of the agreement. Cf. Tyler State Bank & Trust Co. v. Bullington, 5 Cir., 179 F.2d 755, 757.
 
 
 12
 Perhaps as good a statement of the applicable principle as can be found appears in the opinion of the Supreme Court of Maryland in Beckwith Machinery Co. v. Matthews, 190 Md. 182, 57 A.2d 796, 801, Annotation 175 A.L.R. 1360. There, holding that a purported lease rental agreement was a conditional sales contract, though it contained no agreement in terms to purchase, the court, after quoting to the same general effect from Williston on Sales, 2nd Ed., Sec. 336, p. 780, stated:
 
 
 13
 "In determining whether or not a given instrument is a conditional sales contract, we must find what the intention of the parties was at the time it was entered into. The situation of the parties, their purpose, the thing they sought to accomplish, and the method employed, are all important. Once the intention of the parties becomes clear, it is immaterial what the instrument is called, nor how skillfully the real intention of the parties is disguised. What the parties tried to disguise was evasion of the Federal regulation in regard to a down payment. We cannot give much credit to the testimony that if the full purchase price of this machinery had been paid in monthly installments of $579, by the company to the corporation, the corporation would not have transferred full title to machinery to the company. In transacting business in our modern day, some people desire not to know what the law is, but how to evade the law. However clever the form of such evasion may take, when discovered, it is denounced by the courts."
 
 
 14
 In Billiter v. Ledbetter Johnson, Contractors, 60 Ga.App. 1, 2 S.E.2d 677, the court held:
 
 
 15
 "Although a contract may refer to the payment to be made as rent, where it also provides that title to the property shall pass when such rent is paid in full, such a contract will be treated as a conditional sale and not as a rent contract."
 
 
 16
 To the same effect is Austin-Western Road Machinery Co. v. Veal, 5 Cir., 115 F.2d 112. Other cases which may be cited are Hervey v. Rhode Island, 93 U.S. 664, 23 L.Ed. 1003; Air Equipment Corp. v. Rubbercraft, 2 Cir., 79 F.2d 521; Burroughs Adding Machine Co. v. Bogdon, 8 Cir., 9 F.2d 54; Willys-Overland Co. v. Chapman, Tex.Civ.App., 206 S.W. 978.
 
 
 17
 Appellants' reliance on the fact that the bankrupt "was not obligated at all events to pay the total purchase price" as establishing that the instrument was not a conditional sale but a lease, is, we think, entirely misplaced.
 
 
 18
 Putting to one side the fact that it has never been held that a sale is not a sale merely because the seller looks to the goods for his security rather than to the personal obligation of the buyer, this is so because, by both the express and implied terms of the agreement in this case, the bankrupt agreed to pay the purchase price and because the instrument obligated the bank to deliver, and the bankrupt to accept, a bill of sale upon the payment thereof. All of the cases hold that when the amount of the rental charged under a so-called lease is the same as the purchase price, the instrument will, as matter of law, be held a conditional sale rather than a lease. Air Equipment v. Rubbercraft, supra, whereas, when there is a substantial difference, this may not be so.
 
 
 19
 This principle explains the decision in Purity Creamery v. Hays, Tex.Civ.App., 4 S.W.2d 1056, relied on by appellants. There the contract was for the lease of a refrigerating cabinet for one year, for which the lessee agreed to pay the sum of $208.00 per annum as rental, payable in equal weekly installments of four dollars. The contract further provided that at the expiration of the rental period the first party would sell the cabinet to the second party for the sum of $648.00, allowing a credit of the rental paid. The court, reaffirming the established rule laid down in the leading Texas case of Knittel v. Cushing, 57 Tex. 354, that a lease or conditional sale, which in effect amounts to a real sale of property, passes title subject to the payment of the unpaid purchase price and under our registration statutes the same must be recorded in order to preserve the lien, held that the contract could not, on its face, be held to be a conditional sale as matter of law.
 
 
 20
 Of appellants' cited case of Sherer-Gillette Co. v. Philsbury, 5 Cir., 269 F. 595, it is sufficient to say that it was determined under Louisiana law, under which it is held that there can be no conditional sale of movables in Louisiana. Cf. "Louisiana Rule", 175 A.L.R. p. 1373.
 
 
 21
 Finally, in citing the Benton case, Benton v. C. I. R., 5 Cir., 197 F.2d 745, from this court, holding that a lease agreement with an option to purchase must be construed to be a lease, appellant apparently overlooks the fact that this is not such a case. Here the purchase contract provided not for an option or that when all payments provided for had been made, the bank would, if requested to do so, sell the property, but that absolutely and without condition, it would, upon the completion of the payments, issue a bill of sale.
 
 
 22
 The judgment was right. It is affirmed.
 
 
 
 Notes:
 
 
 [1]
 "Be It Remembered that on this day came on for consideration the Petition for Review of the Referee in Bankruptcy's Order denying Petition to Reclaim Property, filed herein by the First National Bank of Fort Smith, Arkansas and Gulf Screen and Wire Co., and upon consideration of the Pleadings, Exhibits, Transcript of Evidence and Briefs of the parties, the Court is of the opinion that the instrument in question was intended to be, and in fact and in law is, a conditional sale or reservation of title to the property in question to secure its purchase price, within the terms of Article 5489, Vernon's Texas Civil Statute, and thus, being unrecorded is void as to the Trustee in Bankruptcy, Respondent herein. This conclusion is reached even when the testimony of the witness Sicard, which was stricken by the Referee, is considered, for the Court is of the opinion that it offers no assistance in determining what the parties intended to be the true import of the document in question
 "The Court further finds that the findings of fact and conclusions of law as contained in the Judgment and the Referee's Certificate are true and correct and those findings of fact and conclusions of law are adopted herein as the findings and conclusions of this Court.
 "It is therefore ordered, adjudged and decreed, that the Petition for Review filed herein by the First National Bank of Fort Smith, Arkansas, and Gulf Screen & Wire Co., Inc. be and it is hereby denied, and that the judgment of the Referee be and it is hereby in all things affirmed."
 
 
 [2]
 These are the referee's findings:
 "I find that on the 15th day of Jan., 1957, the Gulf Screen & Wire Co. of Fort Smith, Arkansas, entered into what is designated as a rental-purchase contract, whereby Nico Wire Cloth Corporation received possession of four Fitz 36" Wire Weaving Looms.
 "I find that under this agreement, Nico Wire Cloth Corp. agreed to pay the total sum of $11,880.00 in 36 payments of $330.00 each, and that Nico Wire Cloth Corporation paid the last eight installments in advance, amounting to $2,640.00.
 "I find that said rental-purchase contract provided that upon the payment of 36 monthly payments, Bill of Sale would be issued to the Purchaser.
 "I find that the bankrupt was delinquent in some of the installments at the time of bankruptcy. Default was not declared.
 "I find that the rental-purchase contract was assigned by Gulf Screen & Wire Company to the First National Bank, of Fort Smith, Arkansas, on Jan. 15, 1957, and notice thereof was given to Nico Wire Cloth Corporation.
 "I find that said rental-purchase contract is unambiguous and is not subject to parole evidence as to its meaning.
 "Conclusions of Law:
 "I conclude that said petition, on the facts introduced and hereinabove found, is a conditional sales contract or chattel mortgage and has not been filed for record in the County Clerk's office and, therefore, under the Bankruptcy Act, is void as against the Trustee, and that petitioner is only an unsecured creditor."
 
 
 [3]
 "All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. Nothing in this law shall be construed to contravene the landlord and tenant law." 9 Tex.Jur., "Chattel Mortgages" Sec. 12
 
 
 [4]
 Schedule "A: sets out the 29th through 36th payments, totaling $2640.00, which were to be, and in fact were, paid in advance. It then reads as follows:
 "Twenty-eight monthly payments of $330.00 each, commencing Feb. 15, 1957, and payable thereafter on the 15th day of each month until paid.
 
 
 [28]
 Total payments $ 9,240.00
 ___________
 $11,880.00"
 "Bill of sale to be issued at end of contract." (Emphasis supplied.)