**BURROUGHS CORPORATION,**
Appellant,

v.

**Richard H. BARRY, as Trustee in Bankruptcy of Dalco American Enterprises, Inc., Bankrupt.**

**No. 18521.**

United States Court of Appeals
Eighth Circuit.

July 11, 1967.

428

David T. DeMars, of Conmy, Conmy & Feste, Fargo, N. D., for appellant.

Lowell W. Lundberg, of Tenneson, Serkland, Lundberg & Erickson, Fargo, N. D., for appellee.

Before MATTHES, LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This is an appeal by the Burroughs Corporation seeking to reverse a decision of the Referee in Bankruptcy (affirmed by the United States District Court) holding that a Burroughs Typing Sensimatic Business Machine in possession of Dalco American Enterprises, Inc., was the property of the Trustee, free and clear of any claims by Burroughs.

On February 13, 1963, Dalco negotiated and signed an agreement with Burroughs for the purchase of the Sensimatic for the sum of $8,985.30, payable in cash thirty days from the date of invoice. It was Dalco's intention to finance the purchase via a chattel mortgage with an independent finance company.

Thereafter, the purchase agreement was cancelled and, on October 7, 1963, the parties signed a "Lease of Burroughs Equipment" and a "Purchase Option Rider" under which Dalco leased the Sensimatic and was given an option to purchase it.[1] The agreement was never

---

1. Dalco rejected an opportunity to enter into a conventional conditional sales contract with Burroughs as payment under the terms of that contract would have been required over a period of eighteen months.

filed with the Register of Deeds of Cass County, North Dakota.

The Referee held that the instrument constituted a conditional sales contract, void as to creditors without notice, because it had not been filed as required by North Dakota law. §§ 35–04–06, 35–04–07 and 51–07–10, North Dakota Century Code. He stated that the following factors were more consistent with a conditional sales contract than with a lease:

(1) That Dalco had a right to purchase the Sensimatic at the end of the thirty-six month period for a sum of $1,660, as contrasted to the estimated value of the equipment as of that date of $3,000 to $4,000. That the initial payment in the sum of $404.25 was described by the parties as a downpayment. That the equipment had a ten-year life.

(2) That Dalco was required by the agreement to keep the equipment insured.

(3) That the salesman's commission was completely paid in a period of six months even though the agreement to lease ran for a period of thirty-six months.

(4) That Dalco was prohibited from encumbering the equipment without the consent of Burroughs Corporation.

■ The Referee's findings of fact must be accepted unless clearly erroneous. Fed.R.Civ.P. 52(a); O'Rieley v. Endicott-Johnson Corporation, 297 F.2d 1 (8th Cir. 1961); Magidson v. Duggan, 212 F.2d 748, 752 (8th Cir. 1954); Kasper v. Baron, 207 F.2d 744, 748 (8th Cir. 1953); Pendergrass v. New York Life Ins. Co., 181 F.2d 136, 138 (8th Cir. 1950).

Judge Sanborn, speaking in *Magidson*, 212 F.2d at page 752, stated:

" * * * [T]he findings of fact of a trial court are clearly erroneous within Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., when (1) not supported by substantial evidence, (2) contrary to the clear preponderance of the evidence, or (3) based upon an erroneous view of the law."

And Judge Blackmun, in *O'Rieley*, 297 F.2d at page 6, restated the standard that this Court will follow in applying the "clearly erroneous" standard:

" * * * whether, although there is supporting evidence, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed', United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746; Commissioner of Internal Revenue v. Duberstein, 1960, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218, or whether 'they are based upon a substantial error in the proceedings or upon a misapplication of the controlling law, or if they are unsupported by any substantial evidence, or if they are contrary to the clear weight of all the evidence'. * * * "

A careful review of the record leaves us with a definite and firm conviction that a mistake has been committed. While the Referee's findings of fact are in general supported by the record, they are clearly erroneous in at least one important particular. The Referee also misapplied the controlling law to the facts.

We turn then to a review of the Referee's decision.

■ (1) At the outset, we would point out that in determining the character of an instrument, the use of the term "lease" has undoubted weight, but the governing consideration is the legal effect of the instrument as gathered from all of its provisions. Burroughs Adding Mach. Co. v. Bogdon, 9 F.2d 54 (8th Cir. 1925). See also, Western Contracting Corp. v. C. I. R., 271 F.2d 694 (8th Cir. 1959); Benton v. Commissioner of Internal Rev., 197 F.2d 745 (5th Cir. 1952).

■ While the Uniform Conditional Sales Act had not been adopted in North Dakota as of the date of the Referee's decision, it provides an authoritative source for definitions. In re South View Country Club of Mankato, Inc., 229 F.

Supp. 105 (D.C.Minn.1963). This Act defines a "conditional sale" as follows:

" 'Conditional sale' means (1) any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (2) any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract."

It is clear that paragraph (2) of the definition was intended to apply to the type of situation presented by the facts in this case.

The Second Circuit, in determining whether an instrument designated as a lease was in fact a conditional sales contract, Allen v. Cohen, 310 F.2d 312, 314, n. 1 (2d Cir. 1962), referred to the above definition and the notes of the Commissioners. These notes stated:

" * * * 2 U.L.A., p. 3: 'It is well known that some sellers attempt to evade the conditional sale recording acts by calling the contract a "lease" or "hiring agreement" and providing for the payment of "rent". Wherever these "leases" are substantially equivalent to conditional sales, they should be subject to the same restrictions. This equivalency seems to exist when the buyer is bound to pay rent substantially equal to the value of the goods and has the option of becoming or is to become the owner of the goods after all the rent is paid. In such a contract "rent" means the purchase

price, and possession as "lessee" means the possession of a buyer under an executory contract of sale. That the buyer, in some cases, has the option of becoming the owner and thus a sale is not sure to take place, is of but small importance, for, as a practical matter, the buyer will always be willing to accept ownership when he has paid the value * * *.' " Ibid.

It would appear then that the sum Dalco was required to pay to exercise its option at the end of the thirty-six month period is of importance in determining whether the agreement was in fact a conditional sales contract or a lease. If Dalco was bound to pay rent substantially equal to the value of the equipment, and gained the option of becoming the owner of the goods without substantial additional payments by so doing, the Referee's finding that the instrument constituted a conditional sales contract would be strongly supported.

While it is undisputed that Dalco had an obligation to make total payments of $6,532 (consisting of thirty-six monthly payments of $182.00 and an initial payment of $404.00), it is also clear that it was required to make an additional payment of $3,094 to exercise its option.

 The Referee's finding that Dalco's option price was $1,660 was clearly erroneous. A review of the agreement shows clearly that Dalco was obligated to pay the sum of $3,094 to exercise the purchase option, a fact which the appellee concedes on appeal.[2] This sum was substantially equivalent, or nearly so, to the estimated then value of the equipment ($3,000 to $4,000), and is approximately one-third of the original list price of the equipment. It must be considered as substantial.

In support of his contention that the option purchase price indicated a conditional sale, the Referee cited: First Na-

2. The appellant argues, however, that $500.00 should be deducted from this sum as Dalco would be required to receive two additional years of service on the equipment having a value of $250.00 per year. Even if we accept the validity of

this argument, our opinion would not change as $2,594 would, in our judgment, constitute a substantial payment for equipment having a depreciated value from $3,000 to $4,000, and an original value of $8,985.

tional Bank of Fort Smith, Ark. v. Phillips, 261 F.2d 588 (5th Cir. 1958); Air Equipment Corporation v. Rubbercraft Corporation, 79 F.2d 521 (2d Cir. 1935); Burroughs Adding Mach. Co. v. Bogdon, supra; In re South View Country Club of Mankato, Inc., supra; In re Crown Cartridge Corp., 220 F.Supp. 914 (D.C. S.D.N.Y.1962). We do not believe any of the cited cases to be controlling here. In each case, the "buyer" was required to pay, in rentals and other payments, *a sum equal* or nearly equal to the purchase price *and had a right to obtain title to the property upon so doing.* In none of the cases was the "buyer" required to pay an additional substantial sum to exercise its option.

In First National Bank of Fort Smith, Ark. v. Phillips, supra, Air Equipment Corporation v. Rubbercraft Corporation, supra, and In re South View Country Club of Mankato, Inc., supra, the alleged lessee was obligated to pay the exact purchase price of the equipment over a period of months and automatically received title on so doing.

In *Fort Smith*, 261 F.2d at page 592, the Court said:

"* * * *All of the cases hold that when the amount of the rental charged under a so-called lease is the same as the purchase price, the instrument will, as matter of law, be held a conditional sale rather than a lease. Air Equipment v. Rubbercraft, supra, whereas, when there is a substantial difference, this may not be so.*" (Emphasis added.)

In Burroughs Adding Mach. Co. v. Bogdon, supra, the agreement provided that the lessee could exercise its option by paying the full rentals for the agreed upon period and an additional $47.22 (10% of the original purchase price). The Court, at page 56 of 9 F.2d stated:

"* * * The final payment, which is nominally the purchase price, is so small in comparison with the entire purchase price as to leave no real choice to the 'lessee.' The obvious purpose was to dispose of the machine under such conditions that when the

'lessee' had paid the 'rental' he could not afford to fail the relatively small final payment to obtain it. This would have been the obvious and natural, if not the inevitable, result. * * *"

The alleged lessee in In re Crown Cartridge Corp., supra, also had the option of obtaining title to the property by paying the agreed rentals for a period of sixty months and making an additional payment of $4,505 (10% of the stated purchase price). The Court there, 220 F. Supp. at page 916, stated:

"The referee stated in his decision: 'The test in determining whether an agreement is a true lease or a conditional sale is whether the option to purchase at the end of the lease term is for a substantial sum or a nominal amount (See Commentaries on Conditional Sales, Vol. 2A of the Uniform Laws Annotated, in construing Section I of the Uniform Conditional Sales Act). *If the purchase price bears a resemblance to the fair market price of the property, then the rental payments were in fact designated to be in compensation for the use of the property and the option is recognized as a real one.* On the other hand, where the price of the option to purchase is substantially less than the fair market value of the leased equipment, the lease will be construed as a mere cover for an agreement of conditional sale. 32 Texas Law Review, pp. 844, 845; Legal Aspects of Selling against Leasing Machine Tools, Wisconsin Bar Bulletin (June, 1957); U. S. v. Vages [Voges] 125 Fed.Supp. 916; Burroughs Adding Machine Co. v. Bogdon, 9 F.(2d) 54.'"

We cannot agree with the Referee that the option purchase price of $3,094 was so insubstantial, in relation to the original purchase price or the estimated value at the end of thirty-six months, that the appellee could not afford to fail to exercise the option.

While we accept the findings of the Referee that the initial payment of $404.00 was described by the negotiators of the agreement as a downpayment and

that the equipment had a ten-year life, we do not believe that either of these factors carry substantial weight in determining whether the agreement was a lease or a conditional sale.

■ (2) Dalco's obligation under the contract to carry adequate insurance to insure its ability to return the Sensimatic in good order at the termination of the lease, or to pay the *value* of the equipment in case of inability to effect a return thereof, does not, contrary to the Referee's conclusion, indicate that the transaction was a conditional sale.

■ It is well settled that one who derives a benefit from the continued existence of a chattel or would be damaged by its destruction has an insurable interest, whether he has or has not any title in the property itself. Harrison v. Fortlage, 161 U.S. 57, 16 S.Ct. 488, 40 L.Ed. 616 (1894); Breece Veneer & Panel Co. v. Commissioner of Int. Rev., 232 F.2d 319 (7th Cir. 1956). A lessee has such an interest. Globe & R. F. Ins. Co. v. Rose, 91 F.2d 635 (8th Cir. 1935), cert. denied 302 U.S. 749, 58 S.Ct. 266, 82 L.Ed. 579 (1937). This is particularly true where the lessee has agreed to keep the property insured and in good order and to return the property, or its value, at the end of the term, 3 COUCH, Insurance, § 24.60 (2d ed. 1960), or where the lessee has an option to purchase the property. Berry v. American Cent. Ins. Co. of St. Louis, 132 N.Y. 49, 30 N.E. 254 (1892). See also New Bedford & N. Y. Steam Propeller Co. v. United States, 81 U.S. 670, 14 Wall. 670, 20 L. Ed. 760 (1872); Beman et al. v. Springfield Fire & Marine Ins. Co., 303 Ill. App. 554, 25 N.E.2d 603 (1940); Crossman v. American Ins. Co. of Newark, N. J., 198 Mich. 304, 164 N.W. 428 (1917).

In holding that the obligation to insure was indicative of a sale, the Referee relied on In re South View Country Club of Mankato, Inc., supra. There the bankrupt was required to keep the equipment insured at the full purchase price during the life of the agreement, and was to receive title to the property when the *required monthly payments had been made* with a nominal additional payment of one dollar. Thus, in *South View,* there was no definite relationship between the value of the equipment and the amount of insurance required to be carried.

In this case, however, the only obligation of Dalco was to keep the machine insured at its current value.

■ (3) While there is sufficient evidence to support the Referee's finding that as to the amount of the salesman's commission, we can not agree with his conclusion that a transaction is changed from a lease to a conditional sale because the entire commission was to be paid to the salesman over a six-month period. It is clear from the record that this commission was based on the appellee's obligation to make payments over a thirty-six month period. It is also clear that the payment was substantially less than the salesman would have received had the appellee gone through with its original obligation to purchase the equipment.

It should also be noted that the salesman's commission was a contingent one and that he lost a portion of it when Burroughs repossessed the equipment upon Dalco's payments as they became due.

(4) Finally, while there is some merit to the Referee's conclusion that the agreement not to encumber the Sensimatic was more consistent with a conditional sales contract than a lease, we do not believe that Burroughs Adding Mach. Co. v. Bogdon, supra, relied upon by the Referee, fully supports his conclusion.

The agreement there provided:

" 'The lessee agrees that *until the full payment of the said rent as aforesaid,* the lessee will not injure, sell, dispose of, mortgage, relet, or in any wise incumber the said adding machines or remove same from Denver.' " 9 F.2d at 55.

This Court, in discussing this provision, stated:

"To 'sell, dispose of, mortgage, * * or in any wise incumber' are acts of ownership not of tenancy. They are inconsistent with and opposed to a leasing of this character of property. The statement concerning them would, in a legal sense, be pure surplusage except for the significant limitation of this inhibition contained in the words 'until the full payment of the said rent'—not until the full payment of the purchase price. The natural and proper inference and construction of this language is that when the full rental had been paid, the 'lessee' could incumber or sell the machine." Ibid.

In this case then, the language of the lease prohibiting the encumbrance of the equipment was pure surplusage. The agreement here contains no language parallel to that in *Bogdon* giving Dalco the right to encumber or sell the equipment when thirty-six months of rent had been paid.

Reversed and remanded for disposition consistent with this opinion.