WALLWORK LEASE AND RENTAL
CO., INC., Plaintiff and Appellee,

v.

JNJ INVESTMENTS, INC., Jerry Pladson,
Nicholas Bergquist, and John Tofte,
Defendants and Appellants.

Civ. No. 9842.

Supreme Court of North Dakota.

March 25, 1981.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for plaintiff and appellee; argued by E. Thomas Conmy III, Fargo.

Gilbert A. Neset, Fargo, for defendants and appellants.

PEDERSON, Justice.

This is an appeal from a judgment awarding Wallwork damages in the amount of $7,922.50 for the breach of an agreement by JNJ. We affirm the judgment.

The case was tried to the court without a jury, and findings of fact were made specially, as were separate conclusions of law, as required by Rule 52(a), NDRCivP. The appellants make no specific attack on any of the special findings and, accordingly, they are presumptively correct. *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641 (N.D.1976). Facts which were found (which we have paraphrased) and which are controlling in the disposition of this appeal are:

(A) JNJ leased certain personal property from Wallwork.

(B) JNJ defaulted.

(C) Pursuant to a provision of the written lease agreement, Wallwork repossessed the property and sold it.

(D) After crediting JNJ with the sale proceeds, $7,673.40, plus interest, is still owing.

■ To the extent that a finding may involve mixed questions of fact and of law, our scope of review is broader than a determination of whether or not, under Rule 52(a), it is clearly erroneous. See, *Dolajak v. State Auto. & Cas. Underwriters*, 252 N.W.2d 180 (N.D.1977). The construction of the written agreement to determine its legal effect is a question of law and is fully reviewable by this court. *Stetson v. Blue Cross of North Dakota*, 261 N.W.2d 894 (N.D.1978).

■ JNJ's principal, if not sole, contention is that the agreement is not a lease but an installment sale which is illegal and void. Consequently our opinion is primarily confined to this issue. In *State Bank, Etc. v. All-American Sub, Inc.*, 289 N.W.2d 772, 776 (N.D.1980), we said that the question of whether or not a lease agreement is a "true" lease is one of law rather than fact. The intent of the parties is largely dispositive when a court seeks to resolve a dispute over a consensual transaction. Where a writing manifests the transaction, the intent must ordinarily be drawn from the writing. Section 9–07–04, NDCC. Ascertaining intent from a statute or a written agreement, when there is no patent ambiguity, is a fully reviewable issue of law. *Saefke v. Vande Walle*, 279 N.W.2d 415 (N.D.1979).

At the time JNJ and Wallwork entered into the agreement, a retail installment sale and a retail installment contract were defined by subsections (3) and (4) of § 51–13–01, NDCC, as follows:

"3. 'Retail installment sale' or 'sale' means a sale, other than for the purpose of resale, of personal property by a retail seller to a retail buyer for a time sale price payable in one or more installments, payment of which is secured by a retail installment contract;

"4. 'Retail installment contract' or 'contract' means an agreement, entered into in this state, pursuant to which the title to, the property in or a lien upon personal property, which is the subject matter of a retail installment sale, is retained or taken by a retail seller from a retail buyer as security, in whole or in part, for the buyer's obligation. *The term includes* a chattel mortgage, a conditional sales contract and a contract for the bailment or *leasing of personal property by which the bailee or lessee con-*

*tracts to pay as compensation for its use a sum substantially equivalent to or in excess of its value and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of the personal property upon full compliance with the terms of the contract;"* [Emphasis added.]

█ The agreement in this case contains an express declaration that it is in fact a lease. That appellation does not bind us. *State Bank, Etc. v. All-American Sub, supra.* JNJ cites *Motor Power Equipment v. Park Transfer,* 188 Minn. 370, 247 N.W. 244 (1933), in support of its claim that the instant transaction was a sale. That case contains a readily distinguishable factor. Park Transfer apparently could become the owner of the property by paying the total rental. Here, JNJ could not become owner by merely paying the total rental but had an option to become owner only by paying the total rental, plus a substantial additional payment of $1,200. The Minnesota case, and a number of others, are discussed in Anno.—Conditional Sale—What Amounts to. 92 A.L.R. 323. See also, *Burroughs Corporation v. Barry,* 380 F.2d 427 (8th Cir. 1967), where the court reported in express language the substance of the distinction as follows:

" 'The test in determining whether an agreement is a true lease or a conditional sale is whether the option to purchase at the end of the lease term is for a substantial sum or a nominal amount . . . *If the purchase price bears a resemblance to the fair market price of the property, then the rental payments were in fact designated to be in compensation for the use of the property and the option is recognized as a real one.* On the other hand, where the price of the option to purchase is substantially less than the fair market value of the leased equipment, the lease will be construed as a mere cover for an agreement of conditional sale.' " *Burroughs Corporation v. Barry, supra,* at 431, quoting *In re Crown Cartridge,* 220 F.Supp. 914 (D.C.S.D.N.Y.1962). [Emphasis in original.]

█ We believe this is a correct statement of the rule for determining the applicability of § 51–13–01(4) to an instrument ostensibly rental in nature. The trial court did not err in concluding that the agreement between Wallwork and JNJ was a lease. However, as we further examine the terms of the written agreement, the label becomes academic only.

█ Ordinarily, when there is a breach of a lease agreement, the measure of damages for the breach is the unpaid rental, subject, however, to a duty to minimize. See, *Mar-Son, Inc. v. Terwaho Enterprises, Inc.,* 259 N.W.2d 289 (N.D.1977), and *Demirjian v. Kurtis,* 353 Mich. 619, 91 N.W.2d 841 (1958).

In this case there is a specific agreement that appears to establish a different rule. Paragraph 19 of the lease provides, in part:

"If Lessee fails to pay when due, any rent . . . Owner shall have the right, but shall not be obligated, to exercise any one or more of the following remedies:

A. To sue for and recover all rents and other amounts when due or thereafter accruing under this lease.

B. To take possession of any or all of the equipment wherever it may be located, without demand or notice, without any Court order or other process of law and without incurring any liability to Lessee for any damages occasioned by such taking of possession.

C. To sell any or all of the equipment at public or private sale for cash or on credit and to recover from Lessee, all costs of taking possession, storing, repairing, and selling the equipment and the unpaid balance of the total rent attributable to the equipment sold for the initial term hereof and an amount equal to 10 percent of the total rent attributable to the equipment sold for the initial term hereof, less the net proceeds of said sale.

D. To terminate this lease as to any or all items of equipment.

E. In the event Owner elects to terminate this lease as to any or all items of equipment, to recover from Lessee as to each item subject to said termination, the worth at the time of said termination, of

the excess, if any, of the amount of rent reserved herein for said item for the balance of the term hereof over the then reasonable rental value of said item for the same period of time.

F. 'To pursue any other remedy now or hereafter existing at law or equity."

■ The parties to this agreement are corporations managed by sophisticated merchants chargeable with the skills to protect themselves. Corporations have the power to contract. Section 10–19–04(8), NDCC. There is no allegation that there is an absence of free and mutual consent. Chapter 9–03, NDCC. The object appears to be lawful. Chapters 9–04 and 9–08, NDCC. No grounds for extinction, rescission, alteration, or cancellation have been shown. Chapters 9–09, 9–12 and 9–13, NDCC.

■ A contract may modify the statutory remedy for a breach. See, e. g., § 41–02–98 (UCC 2–719), NDCC. The Uniform Commercial Code contemplates that commercial practices may be expanded by agreement of the parties, and specifically, that provisions of the Code may be varied by agreement "except as otherwise provided in this title and except that the obligations of good faith, diligence, reasonableness and care prescribed by this title may not be disclaimed by agreement ...." Section 41–01–02 (UCC 1–102), NDCC. None of the exceptions appear to have any application here.

We have been shown no basis for declaring the terms of the agreement between Wallwork and JNJ to be unconscionable as a matter of law. Section 41–02–19 (UCC 2–302), NDCC. See also, *Jamestown Farmers Elevator, Inc. v. General Mills*, 413 F.Supp. 764 (D.N.D.1976), affirmed in part, reversed in part, and remanded for new trial, 552 F.2d 1285 (8th Cir. 1977).

The burden of showing that any of the findings of fact are clearly erroneous has not been met. No errors of law were committed. The judgment is affirmed.

ERICKSTAD, C. J., and SAND, VANDE WALLE and PAULSON, JJ., concur.