### In re Wayne WITKOWSKI and Dianne Witkowski, Debtors.

### Bankruptcy No. 83–05019.

United States Bankruptcy Court,
D. North Dakota.

Jan. 5, 1984.

Jos. A. Vogel, Jr., Mandan, N.D., for debtor in possession.

Joseph Turman, Fargo, N.D., for First Nat. Bank of Oakes.

Dennis Fisher, Fargo, N.D., for Farmers Home Admin. and Commodity Credit Corp.

William Westphal, U.S. Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

On October 27, 1983, the First National Bank of Oakes ("BANK") moved the Court for an order pursuant to section 365(d)(2) of the Code compelling the Debtors to assume or reject a self-styled "lease" pertaining to the following property:

One 12′ × 16′ Mini Swine 120 Head Nursery
    w/self contained pit
    w/spilde "Save" Unit
    w/auto medicator

The Debtors resist the Motion asserting that the transaction was actually a financing arrangement. A hearing was held on November 1, 1983, and thereafter both parties were given the opportunity to brief the issue as well as to submit further affidavits.

The Court has reviewed the file, records and affidavits bearing on this issue including the briefs of counsel. The facts may be summarized as follows:

The Debtor, Wayne Witkowski, wishing to purchase the hog mini-nursery building from a dealer, went to the Bank and spoke to Greg Weber, one of its officers. The purchase price of the building was $10,-365.00. His discussions with Mr. Weber culminated in a lease being entered into on December 30, 1980, which by its terms

called for a total payment of $13,249.50 with $662.00 down and the balance payable in nineteen (19) installments of $662.50 payable on the 30th of each third month commencing March 30, 1981. The Debtor was not required to make any initial sales tax payment, but the Bank did require him to make periodic sales tax payments of $26.50 with each lease payment resulting in an actual lease payment of $675.75.

Under the terms and conditions of the lease, the Debtor: was responsible for all repairs; bore the risk of any loss or damage to the equipment; was responsible for insurance and taxes and was required to indemnify the Bank for all claims of whatever nature arising from or in any way connected with the equipment. Also by its terms, the Bank disclaimed all warranties and in the event of a default was accorded various cumulative rights including the right to accelerate all remaining lease payments.

The lease provided for a year-to-year renewal option upon expiration at the rate of $310.95 per year. There is no specific option to purchase. Concurrent with entering into the lease, the Bank on January 2, 1981, filed a financing statement covering the subject property.

The issue for determination is whether the documents in evidence constitute a lease of the hog mini-nursery or whether the transaction is actually a financing agreement. The case of *In re Brookside Drug Store, Inc.,* 3 B.R. 120 (Bkrtcy.D.Conn.1980) is a case where factors substantially similar to those existing between the instant parties were present. In that case, the court determined that under section 9–102 of the Uniform Commercial Code the intent of the instrument signed by the parties, although called a lease, was to provide a security interest in two cash registers. In making that determination, the court discussed criteria that should be examined in determining the true nature of such a transaction. In *Brookside,* as here, there was no option in the instrument to purchase the equipment for a nominal sum, one of the factors that would make a lease a secured transac-

tion under section 1–201(37) of the Uniform Commercial Code (N.D.C.C. § 41–01–11). Despite the lack of such a provision the court found the presence of other factors sufficient to find the instrument to be actually a secured transaction. Those factors included provisions requiring the lessee to keep comprehensive insurance in force on the property; to bear the loss of the property and to pay installments regardless of theft or destruction; to maintain the property in good repair at his expense; to pay taxes and assessments and license fees and registration fees in connection with the property. Additional indicia of a secured transaction were a disclaimer of warranty of fitness and suitability, a provision requiring, in the event of default, that all remaining unpaid installments of rent would become due and payable and lessee's possession terminated, and a provision authorizing the lessor to file a U.C.C. financing statement. *See also In re Stern Plastics, Inc.,* 18 B.R. 583 (Bkrtcy.D.Kan.1982). Provisions similar to each of the above are present in the instant case. In addition, there are other factors present that indicate a financing arrangement was intended by the parties. The Debtor arranged for the purchase of the property through a dealer. The transaction was arranged through the Bank, an institution normally involved in secured transactions but not normally involved in the leasing of property, particularly hog buildings. Furthermore, the Debtor by affidavit indicates he was told by the Bank officer that he could deduct the lease payments on his income tax returns and that upon lease expiration he would not be charged anything further by the Bank.

In determining whether the transaction was actually a financing arrangement or a true lease, the Court cannot look to but one factor. Instead, it must look to the total transaction. *See Leasing Service Corp. v. Nat. Bank and Trust Co.,* 19 U.C.C.Rep. Serv. 232 (D.C.N.J.1976). Giving consideration to the entire transaction here, the Court finds a financing arrangement was actually intended by the parties. Accordingly, and for the reasons stated herein, the Motion of the Bank is denied and its claim

shall be treated as a secured installment sale.