Joseph Vogel, Jr., Mandan, N.D., for debtor in possession.

John E. Greenwood, Jamestown, N.D., for Cen-Dak Leasing, Inc.

**In re Aaron WINCKLER and Ruth Winckler, Debtors.**

**Bankruptcy No. 83–05445.**

United States Bankruptcy Court, D. North Dakota.

Feb. 14, 1984.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on a Motion brought by Cen-Dak Leasing, Inc., a creditor in the above bankruptcy proceeding, seeking a relief from stay and compelling the Debtors In Possession to assume or reject leases. The Motion was filed on October 24, 1983, and the Debtors inter-

posed their response thereto on November 4, 1983. By its Motion, Cen-Dak alleges that the Debtor, Aaron Winckler, has become substantially in default under various leases as follows:

a. Aaron Winckler is behind two monthly payments on the 1979 Freightliner and four monthly payments on all other pieces of equipment through September, 1983, for default in the amount of $9,103.74. October 1983 payments have not been made in the amount of $2,696.99 for a total of $11,790.73.

b. According to paragraph 5 of each of the lease contracts Aaron Winckler is to pay occupational taxes and government charges imposed in connection with the use of which any vehicle is put. As can be seen by Schedule A–1 of the debtors' petition, a copy of which is attached as Exhibit H, the debtors owe I.R.S. $25,-000.00 for FICA, withholding and road taxes all incurred in their trucking business.

c. In violation of paragraph 5 of the lease for the 1979 Great Dane, the debtor Aaron Winckler has failed to pay sales tax due on the trailer which sum is $315.00, with the intent to deny the State of North Dakota said taxes. Certified copies of the records of the North Dakota Motor Vehicle Department are attached as Exhibit I. ($420.00 under current 4% sales tax)

d. Aaron Winckler testified at the creditor's meeting all of the leased equipment was properly insured through Berger Insurance Agency of Mandan, North Dakota, but as can be seen from the records of that company attached as Exhibit J, the 1972 Kenworth and the 1979 Wilson trailer, serial no. 2X6616 are not insured. This is in violation of paragraph 8 of the lease contracts.

Cen-Dak requests prompt cure of the Debtors' default or, in the alternative, relief from the statutory stay of 11 U.S.C. § 362 in order to cancel pursuant to state law its agreements with the Debtors.

The Debtors filed a response to Cen-Dak's Motion on November 4, 1983. The Debtors argue in their response that the alleged leases were actually installment contracts and that Cen-Dak has failed to perfect any secured interest in the property which the Debtors now possess. A hearing on the matter was held before the undersigned in Minot, North Dakota, on December 5, 1983.

## FINDINGS OF FACT

Cen-Dak Leasing, Inc., of Jamestown, North Dakota, is a lease company engaged in the leasing of semi-tractors, trailers and other types of over-the-road equipment. It maintains a three-acre lot with a warehouse for storage of its equipment in the Jamestown area. All trucks and other equipment which it leases are leased from and returned to this lot.

The Debtor, Aaron Winckler, executed six (6) purported standard lease agreements on January 28, 1983. A further lease agreement was executed by the Debtor on July 8, 1983. The lease agreements provided for rental of vehicles and equipment for the following stated terms:

| Date of Lease | Item of Equipment | Length of Lease | Option Price |
|---|---|---|---|
| 1/28/83 | 1972 Peterbilt | 2 years (24 months) | $ 575.00 |
| 1/28/83 | 1972 Kenworth | 2 years (24 months) | 450.00 |
| 1/28/83 | 1977 IHC | 2½ years (30 months) | 2,000.00 |
| 1/28/83 | 1978 Utility Trailer | 2 years (24 months) | 500.00 |
| 1/28/83 | 1979 Wilson Trailer | 2 years (24 months) | 500.00 |
| 1/28/83 | 1979 Great Dane Trailer | 3½ years (42 months) | 850.00 |
| 7/08/83 | 1979 Freightliner | 3 years (36 months) | 2,600.00 |

Written options to purchase the leased property for the prices stated above were given to the Debtors at the inception of the lease. Each piece of leased equipment had its separate option to purchase.

## CONCLUSIONS OF LAW

The fundamental issue raised by the parties in this matter is whether the agreement between the parties is a lease agreement or a retail installment contract. When determining the character of an

agreement, the use of the term "lease" is not controlling, but the important consideration is the legal effect of the instrument as gathered from the totality of its provisions. *State Bank of Burleigh County Trust Company v. All-American Sub, Inc.,* 289 N.W.2d 772 (N.D.1980). The North Dakota Supreme Court in *All-American Sub,* listed a number of characteristics found in lease agreements which generally indicate that the parties intended to create a secured interest. Those factors were, as follows:

> (1) the lessor's purchase of the equipment from a supplier; (2) the lessor's requirement of a guaranty or indemnity agreement executed by a third party; (3) payment of all taxes, insurance and expenses by the lessee; (4) payment of a substantial security deposit by the lessee; (5) opportunity for the lessee on termination of the lease to purchase the equipment or to renew the lease at a minimal rent; (6) lack of evidence showing the lessor handled any volume of equipment; and (7) absence of storage facilities or handling procedures by the lessor.

*All-American Sub,* 289 N.W.2d at 777 (factors adopted from *Davis Brothers v. Misco Leasing, Inc.,* 508 S.W.2d 908, 76 A.L.R.3d 1 (Tex.Civ.App.1974)). Previously, this Court has placed considerable reliance on the decision in *In re Brookside Drug Store, Inc.,* 3 B.R. 120 (Bkrtcy.D.Conn. 1980), when addressing the issue whether an agreement is a lease or an installment sale. The court in *Brookside* enumerated 16 various factors which disclose a hidden secured transaction. *Brookside,* 3 B.R. at 122–123. A number of these factors focus upon extrinsic circumstances in addition to consideration of the lease terms themselves. Some of these outside factors included: whether the nature of the lessor's business was to act as a financing agency; whether the equipment subject to the agreement was selected by the lessee and purchased by the lessor for this specific lessee; and whether the aggregate rentals approximate the value or purchase price of the equipment. *Id.*

In *Wallwork Lease & Rental v. JNJ Investments, Inc.,* 303 N.W.2d 545, 547 (N.D.1981), the North Dakota Supreme Court again noted that all the terms of a written agreement must be examined in order to determine the true character of the document. The discussion in *Wallwork* concentrated, however, on whether the option to purchase the property at the end of the leased term was for a substantial sum. Although the amount of any "buy-out" provision is only one factor to consider when ascertaining whether a lease is in fact an installment contract, it is the most significant factor for such a determination in North Dakota. Pursuant to the analysis in *Wallwork,* in order for a true lease to exist, the amount paid for the property under the option to purchase must reflect fair market value of the property at the end of the lease term. *Wallwork,* 303 N.W.2d at 547.

The Debtors argue that under normal tax depreciation, the leased equipment would be assigned a zero value by the end of the lease term, thereby representing the expiration of that property's useful life. Accordingly, the lease arguably contemplates that the property will have no value at the end of the lease. Under that reasoning, the Debtors argue that the agreement is truly an installment contract. Nevertheless, Cen-Dak argues that the option prices established by calculating a residual value of approximately 10%, reflects the fact that over-the-road equipment is in "over-haul" condition by the end of the lease term. The Debtors cite other provisions in the purported lease agreement which are indicative of a disguised installment contract: the lessee is responsible for all regular maintenance and repair of the leased property; the lessee must pay all taxes and charges associated with the operation and ownership of the vehicle during the lease term; the lessee is responsible for the registration and licensing of the vehicle; the lessee must maintain all fire, theft, collision, and liability insurance required for use of the vehicle; and the lessee must indemnify the lessor against loss or de-

struction of the leased property. The provision contained in the purported lease agreement which most clearly evidences an installment contract is that which provided for damages upon default under the agreement. That provision provides, as follows:

13. DAMAGES UPON EARLY TERMINATION. Upon the termination of this lease by either party as to any vehicle prior to the expiration of its lease term, the Lessee shall promptly pay Lessor all damages suffered by the Lessor by reason of such termination (or by reason of any breach of this lease by Lessee). Such damages shall include damages determined as follows:

a. *Purchase or Resale.* The Lessee shall promptly purchase and pay for the vehicle, if Lessor so requests, at its Depreciated Value... If the Lessor does not request Lessee to purchase the vehicle or if the vehicle is not so purchased, Lessor shall sell the vehicle (or wreckage under paragraph 12d) within 30 days after its surrender or repossession (or such other period as the parties may agree upon). The sale may be public or private and with or without notice to Lessee, shall be at wholesale, and shall be only for cash payable in full upon delivery of the vehicle and its title papers to the purchaser. If the Net Proceeds of the sale are less than the Depreciated Value of the vehicle such deficiency shall constitute part of Lessor's damages; if such Net Proceeds exceed Depreciated Value, the excess shall constitute an offset of Lessor's other damages.

Cen-Dak has argued that the provisions in paragraph 13a of the purported lease agreements do not apply where the lease is not designated as a finance lease. Although such a damage provision, if applicable, favors the lessor, the North Dakota Supreme Court has indicated that parties to an agreement may as desired expand or vary the statutory remedies for a breach of their contract. *Wallwork Lease & Rental v. JNJ Investments*, 303 N.W.2d at 548.

In the present instance, the Court must find that the disputed instruments are lease agreements. Although the depreciated value of the property for tax purposes may indeed be zero at the end of the lease terms, the property may yet have some market value. The Court is not concerned with the value of the property for tax purposes, but rather looks to see whether the price under the option to purchase is equivalent to the property's fair market value. The Debtor has not shown in this matter that the price fixed by the options is not a fair value for the property at the expiration of the lease terms. Further, it is most evident that Cen-Dak is in the leasing business. Cen-Dak does specifically have the storage facilities in handling procedures for equipment which is returned or not yet leased. This is not a situation where the lessor is primarily a financial institution. *Cf. In re Witkowski*, 37 B.R. 352, (Bkrtcy.D.N.D.1984) (the Court noted that a bank is not normally involved in the leasing of hog buildings). The Court must find the option prices to be substantial sums and will require the Debtors to assume or reject the leases pursuant to 11 U.S.C. § 365.

Accordingly, and for the reasons stated, IT IS ORDERED:

That the Debtors are required to assume or reject their lease agreements with Cen-Dak Leasing, Inc. pursuant to 11 U.S.C. § 365 within ten (10) days following entry of this Order.

That ten (10) days following entry of this Order, the automatic stay of 11 U.S.C. § 362 is modified to permit the movant, Cen-Dak Leasing, Inc., to proceed under state law with cancellation of its contracts with the Debtors.