**In re James K. COOK and Brenda L. Cook, d/b/a Cook Ranch and Cook Irrigation, Debtors.**

**In re Joseph B. COOK and Jean M. Cook, d/b/a Cook Ranch and Cook Irrigation, Debtors.**

**In re COOK ANGUS RANCH, a partnership, a/k/a Cook Ranch, Cook Irrigation, Joseph B. Cook and James Cook, partners, Debtors.**

**Bankruptcy Nos. 85–05076 to 85–05078.**

United States Bankruptcy Court,
D. North Dakota.

Aug. 6, 1985.

Max Rosenberg, Bismarck, N.D., for debtor.

Arlen Ruff, Mandan, N.D., for FNL.

U.S. Trustee William Westphal, Minneapolis, Minn.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

First National Leasing, Inc. (FNL), by Motion filed April 25, 1985, seeks an order compelling the Debtors to assume or reject two irrigation equipment leases. The Motion is resisted by the Debtors who claim the leases are actually conditional sales contracts and as such should be treated as security instruments. A hearing was held before the undersigned on June 25, 1985. The facts may be stated as follows:

### FINDINGS OF FACT

The Debtor, James K. Cook (COOK), is a rancher in western North Dakota who, in addition to his ranching operation, was a dealer in irrigation equipment under the name Cook Irrigation Company. His dealership sold, engineered and installed the equipment of various manufacturers. In 1978 and 1979, Cook decided to purchase irrigation equipment for his own personal use and through his dealership purchased items of irrigation equipment from various suppliers. In 1978, he purchased equipment for his own use for a total purchase price of $36,969.00. In 1979, he made a further purchase of equipment for his own use having a value of $31,045.00. Shortly after making the 1978 and 1979 purchases, he entered into two equipment leases with FNL; and, according to his testimony, the equipment was purchased with funds obtained from FNL. The 1978 lease was executed on September 28, 1978, and pertains to specifically enumerated irrigation

equipment set out in an attachment to the lease. The 1978 lease requires seven annual payments of $8,519.96 for a total of $59,639.00 over the lease term period. The 1979 lease was executed on October 29, 1979, and as with the 1978 lease, is specific in the equipment covered. Its term runs for seven years with annual payments of $6,815.23 for a total of $47,706.00 over the term. Except for the equipment descriptions and the amounts due, the two leases in question are identical in their terms. Both make the lessee responsible for: arranging for delivery; repairs, risk of loss or damage; insurance against theft and damage; taxes; and indemnifying the lessor for all claims arising out of the purchase, lease, operation or condition of the equipment. The leases also contain a disclaimer of warranty clause and specifically provide that upon default the lessor at its option may take possession of the equipment. Both leases specify that the lessor remains owner of the equipment and that upon expiration of the term, the equipment shall be returned to it. Neither of the leases afford the lessee a renewal option nor do either of them contain a purchase option provision. The leases, by their terms, are governed by the law of the State of Nebraska. The Debtor has one payment remaining on the 1978 lease and has two payments remaining on the 1979 lease.

Concurrent with executing the leases, FNL filed financing statements covering the equipment in question.

The leased equipment, in part, consists of underground piping and wiring affixed to the ground. FNL obtained real property waivers from the Debtors as owners of the real property upon which the equipment was placed. In these waivers, the Debtors disclaim any ownership interest and recognize the lessor's right to enter the premises for inspection or removal. The Debtors also by written document acknowledge that FNL was entitled to an investment tax credit.

At the hearing, Cook acknowledged that he does not own the equipment but is only leasing it. He also acknowledged that there was no written purchase option. However, from information received by him at a regional irrigation dealers meeting held some time prior to the execution of the leases in question, he believes there was an oral understanding that the leases could be renewed or the equipment purchased at the end of the term. According to Cook an FNL representative in attendance at the dealers meeting told him that a buy-out could not be put into writing because of IRS laws but that FNL did not want the equipment at the end of the term, and the lessees could buy out FNL for either the fair market value or for 10–15% of the original purchase price. Cook also understood the FNL representative to say that leases could be renewed for a much reduced amount. From this dealer meeting, Cook testified that he believed everything was open to renegotiation at the end of the lease term. Neither of the two leases in question were in existence at the time of the dealership meeting referred to, and Cook apparently did not have any conversations with FNL regarding a right to renew or a right to purchase at the end of the term other than the information he received at the dealers meeting.

As further argument for the existence of a purchase option, Cook testified that the equipment is costly to dismantle with an estimate of $6,000.00 for dismantling and a like sum for reerection.

## CONCLUSIONS OF LAW

This Court has addressed the present issue in several previously reported decisions. *See In re Winckler,* 38 B.R. 103 (Bankr.N.D.1984); *In re Witkowski,* 37 B.R. 352 (Bankr.N.D.1984). Whether an instrument is a security agreement rather than a lease must be determined by reference to applicable state law. Since the agreements at issue were consummated in Nebraska and by their terms specify that the Nebraska law should apply, this Court will construe the agreements according to Nebraska law but, as we shall later find, Nebraska law will not dictate a result contrary to what might be expected under

North Dakota law. Determination of whether an instrument is a true lease or a retail installment contract involves essentially a determination of the parties' true intent regardless of whether the document itself is termed a "lease". Courts, both in North Dakota and Nebraska, initially refer to section 1-201(37) of the Uniform Commercial Code in defining a security interest. This section provides that:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended as security.

U.C.C. § 1-103(37). Nebraska has adopted the foregoing U.C.C. definition and has used it as a springboard for determining the nature of an instrument. FNL, citing several Nebraska Supreme Court decisions, argues that the sole criteria to be considered is whether an option to purchase exists and the option price; the inference being that if no option to purchase exists then the instruments must be considered leases, irrespective of any other factors that might exist.

■ Before considering whether it is appropriate to decide the issue based solely on the existence or not-existence of an option to purchase, we must first decide if under the facts of this case a purchase option exists. Cook believes that FNL, by virtue of comments made at the sales meeting, indicated an intent to collaterally agree to a purchase option at the end of the lease term. The instruments themselves, however, do not contain any language which could be construed as an option to purchase. The parole evidence rule, relied upon by Cook, is a rule of substantive law which prohibits the introduction of evidence of prior or contemporaneous oral agreements, or prior written agreements, where the effect is to vary or contradict a writing intended by the parties to be a final integration of their contract. Parole evidence is permissible under Nebraska law to explain or supplement contract terms unless the court finds the writing to have been intended as a complete and exclusive statement of the terms. *See* U.C.C. § 2-202, R.R.S.Neb. If the parole evidence offered is inconsistent with or contradictory to the written contract, then it cannot be admitted. *See Cosgrove v. Mademoiselle Fashions*, 206 Neb. 275, 292 N.W.2d 780 (1980). Cook's offer of parole evidence to establish that an oral purchase option exists cannot be accepted. It is not only contrary to the language of the two agreements but is also not based upon any clear oral agreement specifically pertaining to the instruments in question. The two "leases" do not contain any purchase option provisions and provide that upon expiration of the lease, the lessee shall return the equipment to the lessor. Secondly, the comments by FNL's representative at the dealer meeting can be considered only in general terms. The instruments now in question did not exist at that time, and the comments were not directed to any particular leases or to Cook's situation specifically. There is no evidence suggesting that Cook was told by FNL that he had or could have an option to purchase the equipment. His understanding in this regard was merely an assumption which did not rise to the level of an oral agreement. The Court must conclude that the two documents in question did not contain purchase options.

■ The question then becomes whether under Nebraska law the lack of a purchase option is alone determinative of the issue. As before mentioned, the inquiry is to the parties' intent. In the past, this Court in interpreting North Dakota law has said that the character of an agreement must be determined from the totality of its provisions rather than solely from the lack of a purchase option. *In re Witkowski*, supra. A reading of section 1-201(37) of the Uniform Commercial Code lends credence to this approach wherein it specifically provides that "whether a lease is intend-

ed as security is to be determined by the facts of each case". The Nebrasks cases of *Crowder v. Allied Investment Company,* 190 Neb. 487, 209 N.W.2d 141 (1973) and *Gibreal Auto Sales, Inc. v. Missouri Valley Mach. Co.,* 186 Neb. 763, 186 N.W.2d 719 (1971), cited by both parties, were concerned with leases that specifically contained written purchase options. The Nebraska Supreme Court in both cases placed reliance upon subpart (b) of section 1–201(37) of the Uniform Commercial Code and, in determining whether the instrument was a lease or security agreement, looked to the amount of the consideration payable at the end of the lease period. Where the consideration was nominal, the court upon the strength of the foregoing Uniform Commercial Code section said that the lease was actually a security agreement. Where the consideration was substantial, the court again relying upon the foregoing U.C.C. provision determined the lease to be a true lease. These cases stand merely for the proposition that where a purchase option exists, the determination of whether or not the instrument is a lease or security agreement turns principally upon the amount of the consideration necessary to purchase the property at the end of the term.[1] The *Crowder* and *Gibreal* decisions do not stand for the converse proposition that the absence of an option to purchase ipso facto renders the agreement a pure lease. Where as in the instant case there is no purchase option, courts do not make such an automatic presumption. As observed by the court in *In the Matter of Tillery,* 571 F.2d 1361 (5th Cir.1978):

> Just as the inclusion of an option to purchase does not in and of itself make the lease one intended for security; so also, the exclusion of such an option does not ipso facto make it a "pure lease".

*In the Matter of Tillery,* 571 F.2d at 1366. The Eighth Circuit, in its decision of *Burroughs Corp. v. Barry,* 380 F.2d 427 (8th Cir.1967), teaches that the character of an instrument must be governed by its legal effect as "gathered from all its provisions". The Nebraska Supreme Court in *Gibreal* also makes reference to the totality of the circumstances applicable in that case which suggests that the Nebraska courts would not make a determination on this issue based solely on the fact that a purchase option is absent. This Court is satisfied with this conclusion despite the fact that its research has not disclosed any published decision by the Bankruptcy Court for the District of Nebraska dealing with the subject. This Court concludes that the rule must be that the absence of a purchase option within an agreement itself is not fatal where other factors contained within the agreement strongly suggests that the intent of the parties was to fashion a security agreement.

 Other factors still entitled to consideration and which indicate a secured transaction rather than a lease are: a provision requiring the lessee to keep comprehensive insurance in force; placing the risk of loss on the lessee; requiring the lessee to pay installments regardless of loss or damage; requiring the lessee to maintain the property in good repair at its expense; requiring the lessee to pay taxes, assessments, and license fees in connection with the property; and a disclaimer of warranties by the lessor. *See In re Witkowski,* supra. *See also In re Niemi,* 27 B.R. 215 (Bankr.Ore.1982); *In re International Plastics, Inc.,* 18 B.R. 583 (Bankr.D.Kan. 1982); *In re Brookside Drug Store, Inc.,* 3 B.R. 120 (Bankr.D.Conn.1980). A review of the 1978 and 1979 leases under review reveal that both of them contain the provisions outlined above. In addition to these factors, courts have also assessed the economic realities of the parties' relationship and the nature of the lessor's business. In the case of *In re Eastern Equipment Co.,* 11 B.R. 732 (Bankr.S.D.W.Va., 1981), the court considered the fact that over the

---

1. This Court, in its previous decision of *In re Winckler,* supra., has noted that under North Dakota law where an option to purchase exists, it is the most significant factor in determining the nature of an instrument. *See Wallwork Lease and Rental v. JNJ Investments,* 303 N.W.3d 545 (N.D.1981).

term of the lease, the lessee would pay considerably more than the purchase price of the equipment and, on that basis, concluded the arrangement had the appearance of a financed sale. Also noted in *In re Eastern* was the fact that the lessor is not a lessor in the normal sense of the word in that the equipment was acquired especially for the lessee rather than as an inventory item for the lessor, and the lessee had a continuing rather than a temporary need for it. These are two additional factors which exist as well in the case now before this Court. Here, Cook arranged for the purchase of the irrigation equipment and had it more or less permanently affixed to his farmland. The testimony establishes that it would be both inconvenient and expensive to dismantle the irrigation equipment which causes the Court to believe that FNL neither wanted nor expected the equipment to be returned upon ·expiration of the lease. In this regard, one final observation must be made. The nature of the equipment, its manner of use, its affixation to the land and expense of removal really leaves Cook with no choice at the end of the lease term. It would seem ridiculous for him to return the irrigation equipment to FNL and equally ridiculous for FNL to take it back. The 1978 lease covers equipment purchased for the sum of $36,969.00. The lease assures FNL a recovery of $59,639.00 over a seven-year period, an increase of 38% over the purchase price. The 1979 lease covers equipment purchased for $31,045.00 and assures FNL a recovery of $47,706.00 over the term, an increase of nearly 35% over the purchase price. This factor alone gives the agreements the appearance of financed sales. The only factor present in the instant case which is characteristic of a true lease is the obligation on the part of the lessee to return the equipment to the lessor at the end of the term. *See generally In re Pye*, 13 B.R. 307 (Bankr.D.Me.1981). However, when all of the existing factors are considered, the Court must conclude from a totality of the circumstances that the 1978 and the 1979 leases suggest that the intent of the parties was to fashion a security agreement despite the absence of an option to purchase.

Accordingly, and for the reasons stated herein, the Motion of First National Leasing, Inc. is DENIED, and its interest shall be treated as that of a secured creditor.

IT IS SO ORDERED.