In re R.L. LARSON and Y.J. Larson, a/k/a Yvonne Larson, Debtors.

Bankruptcy No. 90–05863.

United States Bankruptcy Court, D. North Dakota.

Nov. 21, 1990.

Roger Minch, Fargo, N.D., for Circle.

Sheldon Smith, Bismarck, N.D., for debtors.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on motion of Circle Business Credit, Inc. (Circle), as the lessor of certain equipment, for an order prohibiting the use by the Debtor of funds generated by the subleasing of said equipment.

The Motion, filed October 24, 1990, while not a motion for relief from stay nor a motion to assume or reject an unexpired lease, does propose that the lease documents are true leases rather than conditional sales contracts. The Debtors, responding, claim that the documents are not true leases but are actually retail installment contracts. How the documents are characterized, although important to the instant motion, may be critical to later questions of breach, cure, adequate protection and plan treatment.

The matter came on for hearing on November 5, 1990. From the evidence produced the facts relevant may be stated as follows:

### Facts

The Debtors as sole proprietors are engaged in the business of leasing semi-tractors and trailers. The equipment is not used by the Debtors themselves but is sub-

leased to trucking companies who, in turn, make payments to the Debtors.

On November 19, 1986, Raymond L. Larson, as lessee, and Circle, as lessor, signed a document entitled "Master Leasing Agreement" which set forth the terms and conditions applicable to any property rented or leased in the future and by which reference is made to the Master Lease. Thereafter, and pursuant to the terms of the Master Lease, the Debtor, Raymond L. Larson, entered into eight separate agreements denoted "Master Leasing Agreement Rental Schedules" by which the following thirty-seven pieces of equipment were obtained. Each of the rental schedules refers to the Master Lease of November 19, 1986, and each has attached to it a residual guarantee by which the Debtor guaranteed to Circle a minimum residual defined as, "the purchase of the leased property at the termination of the original term of the leasing agreement" for an amount specified. The following equipment was obtained pursuant to the November 1986 Master Lease and its related rental schedules, to-wit:

| Agreement Date | Units | Term | Monthly Payment | Residual |
|---|---|---|---|---|
| 11–19–86 | 4 1986 American Refrigerated Vans | 80 mos. | 4,995.00 | 84,894.00 |
|  | 5 1987 American Refrigerated Vans<br>2 1986 American FRP Dry Vans<br>4 Sentry 30 1500 Thermo Kings | | | |
| 12–19–86 | 5 Thermo Kings<br>5 1987 American Refrigerated Vans | 60 mos. | 1,106.75 | 18,810.00 |
| 4–29–87 | 1 1987 American Refrigerated Trailer | 60 mos. | 414.00 | 5,645.50 |
| 5–13–87 | 1 Thermo King<br>1 1987 American Refrigerated Trailer | 60 mos. | 257.00 | 3,496.00 |
| 8–26–87 | 2 1988 American Refrigerated Trailer | 60 mos. | 1,362.00 | 18,334.00 |
| 9–28–87 | 1 1987 American Refrigerated Trailer | 60 mos. | 582.00 | 7,823.75 |
| 10–14–87 | 2 1988 Insulated Van Semi–trailer | 60 mos. | 866.00 | 11,657.35 |
| 6–1–88 | 1 1988 LND–30 Thermo King<br>1 1988 New Carrier Unit<br>2 1988 Insulated Van Trailer | 51 mos. | 265.00 | 3,000.00 |

By two separate lease agreements entered into on November 28, 1988, Raymond L. Larson as lessee also leased the following equipment under the following terms:

| Agreement Date | Units | Term | Monthly Payment | Residual |
|---|---|---|---|---|
| 11–28–88 | 1 1988 White GMC Tractor | 60 mos. | 1,445.00 | 10,348.00 |
| 11–28–88 | 1 1989 American Refrigerated Trailer | 60 mos. | 739.00 | 13,500.00 |

As with the other equipment, the 1988 agreements contain a purchase option for an agreed upon residual value.

The Master Lease of November 1986 and the two 1988 leases contain similar language relative to the rights and responsibilities of the parties. All make the lessee responsible for repairs, maintenance, risk of loss, insurance and taxes. The three leases also contain a general disclaimer of

warranty clause by the lessor. All expressly provide that title to the equipment shall remain in the lessor and that the fact of the lessor's ownership will be conspicuously displayed on each piece of equipment. All expressly prohibit the subleasing of the equipment without Circle's consent and all state that the failure to pay monthly rentals, maintain insurance or other non-performance constitutes a breach. Presumably to protect itself from the result of a successful claim that the lease was actually a disguised sale, each lease allows for the filing of financing statements. Circle had itself noted on the motor vehicle title certificates as either owner or legal title owner and did file financing statements on each unit of equipment.

The total of the monthly payments in consequence of the several leases is $12,031.75 and the Debtors are presently in arrears due to difficulties with several of their sub-lessees and escalating fuel expenses. Several trailers and the tractor are not leased out at the present. The tractor incurred substantial mechanical repairs which at present remain unpaid and which subject it to an unsatisfied repairman's lien.

According to Ray L. Larson, all of the equipment is well maintained, road worthy, insured and is capable of being located with little difficulty. He does not dispute the amount of Circle's claim but said that he thought he was purchasing the equipment with Circle merely acting as a finance source. At the hearing Larson testified that the sub-leasing was done with Circle's knowledge and acquiescence. The evidence is not conclusive of this. No document denoting Circle's written consent is in evidence and the court is not persuaded that the sub-leasing was done with the requisite consent. In discussing the present value of the equipment Larson acknowledged that the trailers will have a residual value of around $19,000.00 to $20,000.00 at the end of the sixty-month term.

*Discussion*

1.

■ This court in several previously reported decisions construing documents similar to those now before the court has discussed a number of factors which bear on the question of whether the document is to be regarded as a true lease or a purchase agreement. *In re Brower*, 104 B.R. 226 (Bankr.D.N.D.1988); *In re Cook*, 52 B.R. 558 (Bankr.D.N.D.1985); *In re Winckler*, 38 B.R. 103 (Bankr.D.N.D.1984); *In re Witkowski*, 37 B.R. 352 (Bankr.D.N.D. 1984). To determine the nature of any agreement one must look to applicable state law and apply the rules of that forum. *Tucker v. Paxson Machine Co.*, 645 F.2d 620, 624 (8th Cir.1981). Because the leases in question specify that they should be governed in accordance with the laws of the state in which they were made, reference is to North Dakota. The Uniform Commercial Code as adopted in North Dakota does provide guidance as to whether a lease is intended as security. North Dakota Century Code § 41–01–11(37) (U.C.C. § 1–201(37)) provides:

"Whether a lease is intended as security is to be determined by the facts of each case; however,

(a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and

(b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

U.C.C. § 1–103(37).

This court in its previous decisions has noted that obligations imposed upon the lessee, such as maintenance, insurance and taxes are indicative of a conditional sales contract but that where, as here, there exists a purchase option, the former criteria take on less importance. In *In re Winckler, supra*, this court has previously noted that under North Dakota law where an option to purchase exists, it is the most significant factor in determining the nature of an instrument. *Winckler* and the other decisions have placed principal reliance upon the North Dakota decision of *Wall-*

*work Lease & Rental v. J. & J. Investments, Inc.*, 303 N.W.2d 545 (N.D.1981), where the North Dakota Supreme Court said that for a true lease to exist the option price must be reflective of the fair market value of the property at the end of the term.

"If the purchase price bears a resemblance to the fair market price of the property, then the rental payments were, in fact, designated to be in compensation for the use of the property and the option is regarded as a real one. On the other hand, where the price of the option to purchase is substantially less than the fair market value of the lease equipment, the lease will be construed as a mere cover for an agreement of conditional sale." (Citations omitted).

*Wallwork Lease & Rental v. J. & J. Investments*, 303 N.W.2d at 547.

It is not the mere existence of the option that is important but rather, it is the amount of that option and its relationship to the fair market value of the leased equipment. In most cases the fair market value of the equipment at the end of the lease term can only be approximated and at best, the percentage relationship between that sum and the option price is only an approximation. For this reason, this court and others have held that the option price in order to avoid being characterized as "nominal" need only bear a resemblance to the residual fair market value as contrasted to a nominal resemblance or price. Nominal consideration is a sum which is close to nothing; a sum being so trifling as to be consideration in name only. Here the agreed upon residual price for each of the ten separate leases can only be regarded as substantial. Even though the evidence is incomplete on the issue of fair market value at the end of the term, the agreed upon residual can by no means be termed "nominal". (The total of the residual payments on the ten leases is $177,507.00.) To use

the words of North Dakota Supreme Court, the purchase price indeed bears a resemblance to the fair market value of the property.

■ The fact that the agreements burden the lessee with obligations typical of a purchase contract is not regarded by the courts as deserving of much weight where the leases also have clear and significant option language or other language indicative of a true lease. The Sixth Circuit in *In re Celeryvale Transport, Inc.*, 822 F.2d 16, 19 (6th Cir.1987), noted that such obligations, while typical of conditional sales contracts, also frequently appear in valid true leases and do not, in the face of other indicia typical of a lease, indicate any intent to vest a lessee/debtor with ownership. Our own Circuit Court of Appeals has also refused to give much weight to obligations imposed on a lessee even though by them a lessee assumes certain incidents of ownership. In *Carlson v. Tandy Computer*, 803 F.2d 391, 395 (8th Cir.1986), the court, noting the document in question consistently employed "lease language" said that, "The paramount attribute of a lease, retention of title in the lessor, is found in a clause of the document, which states in clearest terms that the agreement is only a lease." [1] 803 F.2d at 395.

The leases in issue contain similar language. The fact that the leases in question preserve ownership in Circle and contain options for more than a nominal value outweigh any other factor and satisfy the court that the leases are true leases and not disguised purchase contracts.

2.

■ It was first necessary to clarify the true character of the leases because the remedy available turns upon how they are characterized. The definition of "cash collateral" set forth in section 363(a) of the Code does not include proceeds or rents

---

1. The lease clause discussed in the *Carlson* case provides "nothing contained in this lease shall be construed to convey or to create in the lessee any right, title or interest in or to the equipment, except those rights and interests of a lessee. Lessor and lessee confirm their intent that the equipment shall always remain and be

deemed personal property, even though it may be or may become attached or affixed to realty." The relevant language in the leases presently in question is as follows, "Equipment shall at all times during the term remain personal property, and title thereto shall remain in lessor exclusively."

generated out of a mere leasehold interest and thus the court will not address Circle's motion in the context of a motion to prohibit the use of cash collateral. If the leases had been construed as merely disguised sales contracts then the equipment would be property of the Debtor with any proceeds generated being regarded as cash collateral under section 363(a) and subject therefore to Circle's security interest.

As true leases, however, the documents do not convey any ownership interests to the Debtors, but merely a leasehold interest which is a cognizable interest under section 541.[2]

The leasehold is in itself, however, property amenable to being used by the Debtors consistent with section 363. Under section 363(e) that use may, upon request of a party having an interest, be conditioned upon such terms as necessary to provide adequate protection of that interest.

The leases at present are unexpired bringing them within the ambit of section 365. In Chapter 11's a debtor may assume or reject unexpired leases of personal property at any time prior to confirmation by: curing any default or providing adequate assurance of prompt cure, compensating for any losses resulting from the default or providing adequate assurance of prompt compensation therefor, and adequate assurance of future performance.

Any adequate protection available under section 363(e) in recognition of Circle's ownership interest must not only preserve the value of the equipment itself but must preserve the remedies mandated under section 365. Under section 361, adequate protection may take the form of cash payments to the extent any use under section 363 results in a decrease in the value of the owner's interest. Obviously, a right to demand assumption and cure does little good if, in the intervening period, the debt-or has had free use of the property only later to reject the lease. Section 365 contemplates that there be no risk visited upon the property owner and section 363(e) is a means of insuring it does not happen.

A lessee, if assuming an unexpired lease, must adhere to the lease terms in all respects which in this case would include maintaining timely lease payments, maintaining insurance, maintaining the equipment in good repair, discharging all encumbrances and not sub-letting the equipment without consent. The facts before the court suggest that a number of these conditions are already breached placing Circle at greater risk than it would otherwise be in if the leases were immediately assumed.

Although section 365(d)(3) providing for the timely performance of all obligations arising under an unexpired lease of nonresidential real property was meant to apply only in real property situations[3], it does illustrate an appropriate form of adequate protection for the continued use of leased property of any type prior to assumption or rejection.

It is appropriate the Debtors provide as adequate protection for the continued use of the leased equipment continuing payments to Circle as lessor consistent with the terms of the respective leases.

Accordingly, IT IS ORDERED that the Debtors shall immediately account for and set aside as adequate protection funds generated from the subleasing of Circle's equipment in an amount sufficient to pay Circle the monthly rental payments as they come due. Said payments are to continue until the respective leases are either assumed or rejected.

SO ORDERED.

---

2. The test of what is property of an estate lies solely in section 541 which is broad in its inclusion of all legal or equitable interests. A leasehold interest is regarded property of the estate if the debtor is the lessee at case commencement. *See In re Funding Systems Asset Management Corp*, 111 B.R. 500, 510 (Bankr.W.D.Pa.1990); *Matter of Cudaback*, 22 B.R. 914 (Bankr.Neb.

1981); *In re Quick Catering Co., Inc.,* 10 B.R. 250 (Bankr.Nev.1981).

3. For a general discussion of this topic *See:* Battershall, *Commercial Leases and Section 365 of the Bankruptcy Code,* 64 Am.Bankr.L.J. 329 (1990).