**In re WYATT, Donald M. and Wyatt, Betty Lou, Husband and Wife, Debtors.**

**Bankruptcy No. 94–01665.**

United States Bankruptcy Court, D. Idaho.

Sept. 7, 1994.

---

3. *See Freeman v. Hittle, supra,* 747 F.2d 1299 (9th Cir.1984) and *In re Chateaugay Corp., supra,* 922 F.2d 86 (2nd Cir.1990).

**700**

G.W. Haight, Coeur d'Alene, ID, for debtors.

Harold B. Smith, Coeur d'Alene, ID, for AutoRental of Coeur d'Alene.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

Presently before the Court is the debtors' motion for sanctions for violation of the automatic stay and D.P.C.K., Inc. d.b.a. AutoRental of Coeur D'Alene's ("AutoRental") motion for relief from stay.

### I.

### *BACKGROUND*

Both motions concern an agreement entitled, "Consumer Rental–Purchase Agreement" (the "Agreement") which Donald M. Wyatt and Betty Lou Wyatt (the "debtors") and AutoRental entered into on December 14, 1993. The Agreement concerns a 1983 Cadillac Deville. The parties disagree as to whether the Agreement is a sales contract or merely a rental agreement.

Although the Agreement is entitled "Consumer Rental Purchase Agreement," a quarter of the way down the first page the Agreement states: "THIS IS A RENTAL AGREEMENT NOT A PURCHASE AGREEMENT." The Agreement lists the "cash price" of the vehicle as "$3,000." The scheduled payments total $4,080.00 payable in 24 monthly payments of $178.50. Paragraph 8 of the agreement provides:

> We own and retain title to the Property that you are renting. You will *not own* the Property until you have made all of the payments listed above including any late charges and all fees arising from the title transfer and licensing. At the time that you acquire ownership of the Property, title will be transferred to you. This provision is not applicable if you choose to "buy-out" early as explained below. In the event that the Rental Property is stolen, lost, damaged, or destroyed during the term of this Agreement including renewals and extensions, the Renter is fully responsible to the Owner for the fair market value of the Property at the time of any such loss or damage. Renter is responsible to the Owner for any loss or damage to the Property regardless of whether the Property is operated by someone other than the Renter without the Renter's knowledge or permission.

In paragraph 4 the Agreement provides:

> ANYTIME AFTER YOU HAVE MADE YOUR FIRST REGULAR WEEKLY, BI-WEEKLY OR MONTHLY PAYMENT YOU HAVE THE RIGHT TO EXERCISE AN "EARLY BUY–OUT" OPTION AS PROVIDED IN THIS AGREEMENT. IF YOU CHOOSE THE EARLY BUY-OUT, THIS OPTION MAY RESULT IN A REDUCTION OF YOUR TOTAL COST TO ACQUIRE OWNERSHIP. IF YOU BUY-OUT EARLY, YOU WILL PAY: (TOTAL OF SCHEDULED PAYMENTS) minus (AMOUNT YOU HAVE PAID ALREADY) multiplied by 90% (equals) = Early buy out option price.

The Agreement also provides, provided payments are current, that the debtors can terminate the Agreement at any time by returning it to AutoRental. AutoRental may terminate the Agreement only if the debtors are in default. In the event AutoRental terminates, the Agreement gives the debtors between 60 and 120 days (depending on how

many payments have been made) to renew it by bringing payments current.

Title to the vehicle remains in the name of AutoRental. The certificate of title indicates that Northern State Bank has a lien against the Cadillac.

In April, May and June of 1994, the debtors failed to make the scheduled payments under the Agreement. However, AutoRental did not terminate the Agreement.

The debtors filed their joint petition for relief under chapter 13 on June 1, 1994.

On July 11, 1994, J. Pat Kaufman, the president and sole shareholder of AutoRental swore out a criminal complaint against the debtors for grand theft auto. On July 15, 1994, acting on Mr. Kaufman's complaint, the police took possession of the debtors' Cadillac.

On July 20, 1994 AutoRental filed a motion for relief from stay seeking permission to repossess the Cadillac.

On July 21, 1994, the debtors filed a motion for turnover of property seeking an order requiring Mr. Kaufman to return the Cadillac and requesting damages including $1,000.00 in punitive damages.

On July 27, 1994 the debtors' motion came before this Court. The Court determined Mr. Kaufman and AutoRental had acted in violation of the automatic stay and ordered Mr. Kaufman to return the vehicle to the debtors. The hearing was continued until August 10, 1994, to allow the debtors and their attorney time to consider the filing of an adversary proceeding since they were seeking punitive damages.

## II.

### TESTIMONY PRESENTED AT AUGUST 10, 1994 HEARING

On August 10, 1994, the Court heard AutoRental's motion for relief from stay and the debtors' renewed motion for sanctions.

Although at the time the debtors filed their petition for relief they were delinquent in their payments to AutoRental, the debtors have brought their payments on the Agreement current.

According to the evidence produced by the debtors at the hearing, Mr. Kaufman came to the debtors' home and demanded the return of the vehicle. Upon being advised the vehicle had been loaned to a friend, Mr. Kaufman threatened to have the debtors arrested. The debtors had advised him of the fact they had filed a chapter 13 petition.

Mr. Kaufman did in fact file a criminal complaint against the debtors for grand theft auto. As a result the police appeared at the debtors home on July 15, 1994 and removed the vehicle.

Mr. Wyatt testified that prior to its confiscation by the police, he used the Cadillac to transport retarded children and that he received twenty cents a mile for his services. Due to Mr. Kaufman's unlawful possession of the vehicle, Mr. Wyatt lost the opportunity to transport the children on four separate occasions each of which would have entailed a forty mile round trip.

Mr. Wyatt also testified that his daughter was unable to work during the period the Cadillac was in Mr. Kaufman's possession. However, Mr. Wyatt also admitted that another truck (not suitable for transporting the retarded children) could have been used to take his daughter to work.

Mr. Wyatt also testified that he had to contact his attorney on several occasions regarding the repossession of the Cadillac and that he had incurred legal expenses in recovering the Cadillac. In contacting his attorney Mr. Wyatt also incurred several long distance phone charges.

Mr. Kaufman testified that he knew the debtors had filed a bankruptcy petition and that the automatic stay was in effect at the time he first attempted to recover the vehicle from the debtors on July 11. He also testified that he filed the Vehicle Theft Report against the debtors with full knowledge that the stay was in effect. He still maintains that his actions were proper because according to Mr. Kaufman the debtors have no interest in the Cadillac whatsoever. Mr. Kaufman bases this conclusion on the terms of the Agreement.

Although Mr. Kaufman testified that he informed the police that the debtors were in bankruptcy, neither the Vehicle Theft Report nor the Police Report disclose this fact.

## III.

### AUTORENTAL'S MOTION FOR RELIEF FROM STAY

AutoRental contends that the Cadillac should be immediately turned over to it on the grounds that the debtors do not have any right title or interest therein because: (1) the Agreement is a rental agreement and does not confirm any ownership interest; and (2) pursuant to Idaho Code § 49–503 the debtors cannot obtain any interest in the vehicle without appearing on the certificate of title. Essentially both of these arguments are based on the premise that the Cadillac is not property of the estate and therefore Auto-Rental did not violate the stay by attempting to recover the vehicle.

However, even assuming that the Agreement is a lease, AutoRental's first argument fails because a debtor's interest in property as a lessee is property of the estate unless the lease has been terminated prior to the commencement of the bankruptcy proceeding. A leasehold interest is clearly property of the estate. 11 U.S.C. § 541(a).[1] *In re Larson*, 128 B.R. 257, 262 n. 2 (Bankr. D.N.D.1990) (pursuant to section 541(a) a lease hold interest is property of the estate) (citing *In re Funding Systems Asset Management Corp.*, 111 B.R. 500, 510 (Bankr. W.D.Pa.1990); *Matter of Cudaback*, 22 B.R. 914 (Bankr.Neb.1982); and *In re Quick Catering Co., Inc.*, 10 B.R. 250 (Bankr.Nev. 1981)). Although AutoRental presented evidence at the hearing showing that due to the debtors' delinquent payments AutoRental had the right to terminate the Agreement, there is no evidence in the record that Auto-Rental actually terminated the lease. Further, the right to seek relief from forfeiture of a lease is also property of the estate. *Wilson v. Bill Barry Enterprises, Inc.*, 822 F.2d 859, 861 (9th Cir.1987). The Agreement gives the debtors the right to reinstate the Agreement within sixty days of the termination thereof. Thus regardless of whether the Agreement is a lease or a purchase agreement the debtors' interest in the Cadillac is property of the estate.

Next, pursuant to Idaho Code Section 49.503, AutoRental contends that the debtors have no interest in the Cadillac. Idaho Code section 49–503 provides:

> Except as provided in sections 49–502, 49–510 through 49–512, and 49–514, Idaho Code, no person acquiring a vehicle from the owner, whether the owner is a dealer or otherwise, shall acquire any right, title, claim or interest in or to the vehicle until he has issued to him a certificate of title to that vehicle, nor shall any waiver or estoppel operate in favor of that person against a person having possession of a certificate of title or an assignment of the certificate of the vehicle for a valuable consideration.

Idaho Code § 49–503.

AutoRental has retained and never delivered title to the vehicle to the debtors.

There are only a few cases construing Idaho Code Section 49–503. However, in 1949, the Idaho Supreme Court considered the effect of a predecessor provision, Idaho Code § 49–404 (1941)[2], on an option to pur-

---

**1.** 11 U.S.C. § 541(a)(1) provides:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
11 U.S.C. § 541(a)(1).

**2.** Idaho Code Section 44–404 (1944) provided:
Except as provided in Sections 48–402–a, 48–402–j, 48–402–k, 48–402–*l* and 48–402–n of this act, no person acquiring a motor vehicle from the owner thereof, whether such owner be a dealer or otherwise, shall hereafter acquire any right, title, claim or interest in or to said motor vehicle until he shall have issued to him a certificate of title to said motor vehicle, nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate of said motor vehicle for a valuable consideration.
1941 Idaho Session Laws, Chapter 144, § 3, I.C. 48–402(b) (renumbered 44–404 (1944). .

chase and month to month equipment rental agreement. *Johnson v. Bennion,* 70 Idaho 33, 35, 211 P.2d 148, 150 (Idaho 1949). The Idaho Supreme Court held that former section 44–404 (1941) had no affect upon the validity and enforceability of the option to purchase and rental agreement as between the owner of the vehicles and the lessee/option holder. *Id.*

 Idaho Code § 49–503 is substantially similar to its predecessor former Idaho Code Section 49–404 and there is no indication that the legislature intended to change the result in *Johnson v. Bennion,* when it amended section 49–404 (1941). Accordingly, it is concluded Idaho Code Section 49–503 does not affect the validity of the rental and option to purchase agreement between the parties. The statute simply cannot be interpreted to defeat the interest of a purchaser who has paid all, or a portion, of the purchase price of the vehicle to the seller.

 Thus, regardless of whether the Agreement is a contract of sale, or a lease and purchase option agreement, the debtor has an interest in the Cadillac created by the Agreement.

 In the alternative, AutoRental contends it should be granted relief from stay because the debtors are not providing it adequate protection under 11 U.S.C. § 362(d)(1).

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property.

11 U.S.C. § 361(1).

The debtors are now current on their monthly payments and the vehicle is insured. The debtors have agreed to repair the vehicle as soon as possible and to continue to make the scheduled lease payments. Ac-cordingly, the Court concludes the debtors are providing adequate protection.

 Next, AutoRental contends that it is entitled to relief from stay pursuant to section 362(d)(2). Section 362(d)(2) provides that a creditor is entitled to relief from stay:

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; *and*

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2) (emphasis added).

Whether the debtors have an equity in the property depends upon whether the Agreement is a lease or a purchase agreement. However, regardless of whether the debtors have an equity, AutoRental is not entitled to relief from stay because the Cadillac is necessary to Mr. Wyatt's continued employment and is therefore necessary to an effective reorganization.

Accordingly, AutoRental's motion for relief from stay is hereby denied.

## IV.

### DEBTORS' MOTION FOR SANCTIONS

11 U.S.C. § 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The Court has previously found that Mr. Kaufman and AutoRental violated the automatic stay.

"A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether a party believed in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded."

*Johnston Environmental Corporation v. Knight (In re Goodman),* 991 F.2d 613, 618

(9th Cir.1993) (*quoting Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 482 (9th Cir. 1989)) (*quoting In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989)).

■ The debtors informed Mr. Kaufman they had filed bankruptcy petition upon his first demand for the return of the vehicle. Despite this warning, Mr. Kaufman continued to demand the return of the vehicle, and threatened the debtors with arrest. Mr. Kaufman then filed a criminal complaint against the debtors. As a result, Mr. Kaufman and AutoRental willfully violated the automatic stay.

■ Since an action to collect punitive damages for violation of the automatic stay should be an adversary proceeding a request for punitive damages will not be considered by motion. Therefore, the debtors request for punitive damages will be denied.

■ However, debtors are entitled to actual damages.

The debtors have suffered actual damages as follows:

1. Rental value of the Cadillac for four days: $23.84.[3]

2. Lost Revenue: $32.00.[4]

3. Long distance phone charges: $10.00

■ Further, sanctions will be imposed against D.P.C.K., Inc., d.b.a. AutoRental of Coeur d'Alene, and J. Pat Kaufman sufficient to cover the debtors' attorney's fees and costs, and to partially recompense the debtors for their time and efforts, in obtaining the return of the vehicle. $1,000.00 is found to be an appropriate sanction considering the fact Mr. Kaufman resorted to a rather egregious improper use of the criminal laws to attempt to enforce a civil remedy prohibited by federal bankruptcy law.

A separate order will be entered.

---

3. $178.50 (monthly rental fee) divided by 30 (number of days in month) equals $15.96 (per day rental cost). Four (number of days vehicle withheld) times $5.96 equals $23.84.

4. Four forty mile trips equal 160 miles. One hundred and sixty miles times twenty cents equals $32.00.